Simon, J.
delivered the opinion of the coux-t.
This is a suit for damages. Plaintiffs allege, that in the spring of the year 1840, they had neax-ly completed their work on the Baratax-ia and Lafoux-che Oanal, and were engaged in excavating the said canal, through a piece of land belonging to them, measuring five arpents fx-ont on the left bank of the Bayou Lafourche, by forty appents in depth, hounded on each side by lands belonging to the defendant, Eliza Mills, wife of William. Eield (separated in property from her husband); that they had employed in the-said wox-k about sixty slaves, and two dredging machines; when their said- land was over *258 flowed, and the further excavation of said canal was thereby interrupted; that the labor of most of said slaves was lost to them, their expenses increased by sickness of their slaves, caused by the overflow, and the completion of the said canal greatly retarded; by all which, in injuries, and particularly by that arising from the delay in the opening of the said canal, all occasioned by the said overflow, they have sustained damages to the amount of $15,000. They further represent, that the said inundation and damages were owing to the want of good and sufficient levees on the property of the defendant, Mrs. Field, lying on each side of their land, and to the neglect [424] and omission of the said defendant to make and maintain such levees thereupon, as by law she was required to make on her said property; that said neglect was gross, culpable, and intentional on the part of the defendant, who is responsible for the damage caused thereby. They also state, that in default oi the said defendant, the police jury of the parish of Lafourche interior was bound to cause said levees to be made and maintained in good faith, &c. &c.; and that the said police jury is therefore jointly and severally indebted to them in the said amount of damages, &c. &c.; they pray for judgment against the defendant, Mrs. Field, and the police jury in solido, for the sum of $15,000. The defendant, Mrs. Field, pleaded the general issue, and further averred, that she had suffered damages from the operations of the plaintiffs, who have obstructed the material drains of her plantation by the embankments of their canal; that her crop was totally ruined ; by the loss of which she has suffered damages to the amount of $10,000, which she pleads in reconvention against plaintiffs’ demand. The police jury also pleaded the general issue. The case was regularly tried by a jury, who found a verdict in favor of the police jury, and against the defendant, Mrs. Field, for $1200; and after an unsuccessful attempt to obtain a new trial, the defendant, Field, took the present appeal.
Our- first inquiries must he in relation to numerous bills of exceptions, taken by the defendant to the opinion of the court on divers questions of evidence, and also to the legality of the charge of the court to the jury.
1. The record shows us, that the court a quo, having decided that the plaintiffs had a right to show possession and acts of ownership by parol testimony, defendant’s counsel took and tendered a bill of exceptions, in which it was simply stated, that the plaintiffs had offered to prove ownership by parol; which bill the court refused to sign, unless it embraced the reasons on which it was grounded, and suggested to the counsel the' propriety of embodying all the testimony objected to, and admitted by the court in the bill [425] of exceptions; which was declined. "We are of opinion that the district judge' did not err in permitting parol evidence to be introduced, to prove a possession and acts of ownership; and we think, also, that he acted correctly in refusing to sign a bill of exceptions, which did not embrace the true grounds of his opinion. This court has often decided, that a party who takes a bill of exceptions, must spread on its face every thing necessary to bring the point in its true light before the appellate court. 8 FT. S. 889 ; 11 La. Reports, 309; 12 La. Reports, 266. The most reasonable and proper mode was undoubtedly to embody the testimony admitted by the court in the *259 bill of exceptions, as this would have enabled us to decide whether the court below erred or not. But this having been declined by defendant’s counsel, we must consider the evidence as if no exception had been taken to its admissibility.
2. The next bill of exceptions is one taken to the opinion of the court, permitting the plaintiffs to prove, that many of the inhabitants had been obliged to quit their houses, in consequence of the overflow resulting from the-crevasses on the land of the defendant. We think the district judge did not err. The object of the evidence was certainly pertinent to the issue, as it went to show the extent of the inundation, and the cause from which it proceeded.
3. Defendant’s counsel having proposed to ask a witness the following questions: “ Did you, or not, as inspector of the upper part of the fifth ward of the parish, apply to Judge Knobloch, as register of conveyances, to know to whom a tract of -unoccupied and uncultivated land in your ward, on the left bank of the bayou, belonged,- and were you not answered, that it belonged to Varice Ooulon? ” and other questions to the same purport, with regard to other tracts; the district judge refused to permit the interrogatories to be propounded, and said defendant took a bill of exceptions. We think the judge did not err; as the evidence sought to be introduced was not only harassing, but went to show title by parol and reputation. The best evidence to prove the facts alluded to, was the production of certified copies [426] of the acts said to exist in the office of the register of conveyances.
4. The district judge decided correctly in permitting the plaintiffs to prove what defendant’s husband had said in relation to her levees. It had been clearly shown that he was, and acted as the general agent of his wife, and transacted all her business; and his acts and conduct in the administration of the affairs of the defendant, were good evidence against her, particularly to rebut her reconventional demand.
5. The evidence offered from a suit between William Field, in his own name, and F. Girod, is in no manner connected with his declarations, referred to in the fourth bill of exceptions, and was properly rejected by the court; the record of said suit was res inter alios acta.
O. The situation of the plaintiffs’ levees, on the opposite side of the Bayou Lafourche, has nothing to do with that controversy, and cannot be made the subject of an investigation in this suit.
7. The last bill of exceptions, is one taken by the defendant to the judge’s charging the jury, that “ it was not necessary to show a police regulation, to compel a front proprietor to make his levees on the bayou which communicates with the river,” and referring them to the act of the legislature, respecting roads and levees, of 1829. This law of 1829 provides, that the levees shall be made by the riparian proprietors, in the proportions and at the time prescribed by the act. It fixes the height and base of the levees; gives the distance from the river; leaves the said distance on the bayou to the determination of the police jury; authorizes the police juries to appoint inspectors ; provides, in its 25th section, “ that every proprietor, whose levee shall have been broken by his own neglect to comply with the provisions of this *260 act, shall be liable towards the planters who shall suffer by it, for all damages and losses, agreeably to articles 2294 and 2295 of the Civil Code, under the head of offences and quasi offencesand appears to be a general law, passed for the purpose of establishing certain uniform rules and regulations in rela[427] tion to the levees which are to be made on the river Mississippi, or bayous running to or from the same. Under this law, there was certainly no necessity for any police regulation to compel front proprietors to make their levees, as the law itself makes it the duty of every riparian proprietor to make his said levees, and renders him responsible in damages to any one who may suffer from his neglect. The charge was, in our opinion, correct; and under it, by referring to the law of 1829, the jury were fairly enabled to apply the evidence to the respective pretensions of the parties.
On the merits of the case, we have carefully perused and examined the voluminous record which contains the testimony of the numerous witnesses heard on both sides. Some parts of the evidence appear contradictory; several of the witnesses say, that the complaint was universal about Mrs Field’s levees; that it was useless for others to make levees whilst these were neglected ; one of them swears that he traversed the whole extent and counted thirty-nine crevasses on the defendant’s land, and agrees with other witnesses that the inundation must be attributed to the fault of Mrs. Field; plaintiffs’ witnesses generally concur in saying that there had been gross negligence respecting defendant’s levees, as the crevasses on her land below the company’s tract were of four years’ standing and had never been stopped; that those crevasses were sufficient to have overflowed the whole country; that as to negligence, there had never been any thing else, and that for a long time nothing had been done to the levees. On the other hand, defendant attempted to show that there were crevasses on other tracts which might have been the cause of the inundation: on this subject, the evidence, though contradictory, appears to weigh very particularly on the side of the plaintiffs, who, from the situation of the tract of land on which they were excavating their canal, as shown by the plan produced in evidence, must have suffered considerably from the crevasses on defendant’s land, and from her neglect in making the [428] necessary repairs tp her levees. On the whole, when we consider that the jury who tried this cause was composed of inhabitants of the parish where the inundation complained of took place; that they were all undoubtedly well acquainted with the situation of the different tracts subject to be overflowed; that they heard the witnesses who testified before them, and were the proper judges of the degree of credibility to be placed in their testimony ; when we consider also that the judge of the district presided in the’ cause, and that after having gone through the minute proceedings of a long and tedious trial, in which he had repeated opportunities of observing the deportment and conduct of witnesses, with whom he was perhaps not unacquainted, and that he refused to set aside the verdict of the jury, we cannot refrain from expressing our deliberate opinion that such a verdict, which so far from being manifestly erroneous, ought not to be disturbed.
It is therefore ordered and decreed, that the judgment of the district court be affirmed, with costs.