## *DIANA DESHAUTELS v. A. B. FONTENOT, her Husband.

Before the adoption of the Civil Code of 1808, under the Spanish law which then governed, the children of female slaves, which were the separate property of the wife, became community property. But, under the Code of 1808 and since, it has always been held, that such children were the separate property of the owner of the mother. The adoption of the code operated upon and regulated the rights to such property, even where the parties were married prior to its adoption. Parties are presumed, in contracting marriage, to consent that their rights, in the absence of a marriage contract, are to be governed by such laws as the legislative power of the country may adopt. It would be inconvenient, impolitic, and produce confusion, to have the property of different families governed by different general laws.

APPEAL from the District Court of St. Landry, Voorhies, J. Swayze and Taylor, for plaintiff. W. B. Lewis, for defendant. E. H. Martin, for intervenor. The judgment of the court was pronounced by

PRESTON, J. The slave Helen was the paraphernal property of the plaintiff. She married the defendant in 1806, before the adoption of the Code of 1808, and when, under the Spanish jurisprudence, the children of slaves became the property of the community of acquets. Under the Code of 1808, it has always been

---

\* This case was decided in September, 1850, but the decision of the court has not been given to the reporter. The decision now reported, was rendered on a re-hearing.

held, that the children of slaves were the separate property of the owner of their mother.

We have come to the conclusion, that the children of *Helen*, born after the adoption of that code, belong to the plaintiff. She made no marriage contract with her husband; they simply celebrated their marriage. In doing so, it is not probable that either spouse, in reality, referred to the laws on the subject of the community of acquets. In the absence of an agreement of the parties, the correct view to take of their contract, is, that they submitted the regulation of their marital rights to the existing laws, subject to such changes by general laws, as might be adopted by the legislative power of the government, for the interest of the country.

Under our representative form of government, the laws are considered the will of the people, expressed through their legislative representatives. In theory, therefore, the defendant is supposed to have consented to the change of the law of community by adopting, through his representatives, the Code of 1808.

Should the community of acquets be entirely abolished by law, the repealed law would not remain in force to govern the future, or even the past acquisitions of spouses, whose marriages had been celebrated before its repeal. It would be inconvenient, impolitic, and produce confusion, to have the property of different families governed by different general laws; and it would be much more conformable to reason, that all property and the rights of individuals should be governed by the existing general laws.

We have always held, that the act of 1844, materially changing the law of community, by giving the surviving spouse the usufruct, during life or while unmarried, of the community property, took effect as to marriages celebrated and property acquired before its passage. There is no difference, in principle, between that case and the present. In this, the community of acquets is terminated by judgment; in that, by death. The well settled principle, that married persons removing from the place of their marriage to a country where the laws, governing their marital rights, are different, subject their acquisitions to the laws of the place to which they remove, by analogy, supports the views we have taken of this case.

We contract marriage with a view to progeny, and in the evening of life, at least, toil for our children alone; having married, on the supposition that they would take our places and inherit all our property. Should the Legislature enact, that the surviving spouse, or the first born, should inherit our whole estate, it would materially change the object of our marriage, and of our subsequent labor; and yet all would be subject to the new provisions of law.

The power to change our general laws is inherent in society, and a change in those laws, must necessarily produce a correspondent change in the rights and relations of individuals. Marriage is a civil contract, to be sure; but it is a contract, which the interest of society require should be regulated in its consequences, and especially in its effects upon property, by the general and existing laws of the State. Cases might possibly grow out of the contract of marriage, in which the hopes created by existing laws might be so strong and legitimate, that they could not be disappointed by subsequent legislation, without destroying our confidence in the laws; but we do not consider the present such a case.

It is therefore adjudged and decreed, that the judgment of the district court be affirmed, with costs.

Rost, J. I adopt the conclusions of Justice Preston.