Desobry et als. v. Schlater et als.

## No. 4536.

### FRANCES DESOBRY et als. *v.* ROMAN SCHLATER et als.

Parties to a marriage contract in Louisiana can agree therein, that the property they may acquire by succession or donation during marriage, shall fall into the community of acquets and gains, and the father and mother of the parties to the marriage can give, for the benefit of said parties, the whole or a part of the property they may have on the day of their decease.

Parties may stipulate as they like, provided the thing stipulated is not in contravention of a prohibitory law. Any stipulation, therefore, in a marriage contract, which is not in violation of a prohibitory law, is binding upon the contracting parties, as long as the contract lasts.

All stipulations which the law permits to be made in marriage contracts may be altered by the husband and wife jointly before the celebration of the marriage, but not afterwards. As they bind themselves at the time of the marriage, so they remain bound so long as the marriage lasts.

Whether the stipulations of a marriage contract can be subsequently changed or not, it is clear that the changing of said contract would be, in reality, a new one, and that, as such, it would have to be entered into by all those who were parties to the first contract, and that the stipulations to that effect should be positively stated.

The fruits of community property belong to the community and are liable to seizure in payment of a community debt.

Plaintiffs having pleaded the prescription of one year against the defendants' answer and pretensions;

Held—That it does not appear that this case is governed by any of the provisions of the article of the code regulating said prescription.

APPEAL from the Fifth Judicial District Court, parish of Iberville. *Posey*, J. *A. & E. B. Talbot, David H. Barrow, C. Roselius* and *Alf. Philips,* for plaintiffs and appellees. *Samuel Matthews, George Wailes* and *William H. Hunt,* for defendants and appellants.

MORGAN, J. On the sixteenth December, 1846, Jean Arvillien Dardenne and Frances Desobry, entered into a marriage contract, by which it was stipulated that the future husband brought into marriage property valued at $18,000, and the future wife $7500 in cash, which sum was advanced by her father and mother out of the share which might fall to her in their succession after their death. This sum of $7500 was acknowledged to have been received by the future husband. Besides the cash, the future wife also brought into marriage a slave, aged about eighteen years, which was also advanced by her father and mother upon the same terms. The parties to this contract were Dardenne and Frances Desobry, and her father and mother, Lewis and Minerva Desobry.

By this contract it was further agreed that all the property brought by the future husband and wife in marriage, or which might fall to them or either of them by succession or donation during their marriage, should be held in common between them under a title similar to that of acquets and gains, made during the existence of the marriage; and it was expressly agreed between the parties to the contract, that the future wife had not, and should never exercise any dotal or paraphernal rights. This portion of the contract is as follows:

"Article third—The parties to this contract, that' is to say, the said Jean Arvillien Dardenne and the said Frances Desobry and her said father and mother, Louis Desobry and Minerva, his wife, convenant and agree that all the property brought by them in marriage, or which may fall to them, or either of them, by succession or donation, during their marriage, shall be held by them in common, on a title similar to that of acquets and gains, made during the existence of the marriage, it being expressly understood by and between the parties to this contract that the said future wife has not, and can never exercise any dota[1] or paraphernal rights.

Dardenne and Frances Desobry were married under this contract.

At various times after the marriage the father and mother of Mrs. Dardenne gave to Dardenne sums of money. They also gave him a slave. He receipted for the amounts received, and it was stated in the receipts that the money and the slave given were received as donations to Mrs. Dardenne, to be deducted out of any interest which she might eventually have in the succession of her father and mother.

On the twenty-fourth March, 1856, Louis Desobry, Mrs. Dardenne's father, sold to Dardenne certain pieces of property for $10,150, of which $2000 were paid in cash, and for the balance the vendor made a donation thereof to his daughter, Mrs. Dardenne, as an advance of her share of inheritance, which sum, so advanced, was to be considered as the paraphernal property of Mrs. Dardenne. On the fifth September, 1866, Mrs. Dardenne instituted suit against her husband, in which she sets up the marriage contract referred to, and the payments made therein and thereunder, all of which payments she avers were received by her husband, and were by him converted to his own use and benefit. She alleges further that the stipulations therein contained, with reference to the community which it was agreed should exist between her husband and herself, are contrary to law, and are therefore null and void; that the derangement of her husband's affairs and his pecuniary embarrassments induce her to fear that she may lose her rights and claims for the sums of money and the property received by him for her; and she prayed for a separation of property, and for a judgment for the amount of her claims, with interest, and with a legal mortgage to secure the payment thereof upon her husband's property. The husband made default, which was duly confirmed, and on the twenty-eighth September, 1866, judgment was rendered in her favor, declaring that portion of their marriage contract regarding the community which was to exist between them null; decreeing, further, a separation of property between her husband and herself, and giving her a judgment for $19,641, amount of her separate and paraphernal funds and moneys received by her husband for her account, with legal interest from judicial demand until paid, and granting her a legal mortgage on the

property of her husband to secure the payment of the $19,641, to date from the dates upon which the several sums making up this aggregate were received by him. This judgment was published according to law.

On the first March, 1867, by public act passed before the recorder of the parish in which they reside, Dardenne, in full satisfaction of the judgment above recited, gave to his wife, who accepted the same under his authorization, a certain plantation known as the Crescent plantation, together with the mules, horses, sheep, and agricultural implements thereon, and another tract of land. This *dation en paicment* was recorded on the twenty-first March, 1867. On the thirteenth February, 1867, Mrs. Dardenne gave to her husband a power of attorney, to manage all the matters regarding her property, and he has been administering it ever since. The Crescent plantation has been cultivated by him, and in the year 1871 a crop of sugar and molasses was made thereon.

On the twenty-eighth September, 1866, Roman Schlater obtained a judgment against Brusle and Dardenne, *in solido*, for $9504, with four per cent. interest thereon per annum, from first April, 1862. On the seventh December, 1871, he issued execution thereon. On the eighth December, the sheriff seized six hogsheads sugar, and on the fifteenth he seized twenty-six and two-thirds hogsheads and three thousand seven hundred and forty-five gallons molasses, more or less, of which he subsequently released one-third of the sugar and two thousand eight hundred gallons of molasses, under instructions from Schlater, which sugar and molasses was produced on the Crescent plantation.

This execution was injoined by the plaintiff herein. In her petition she sets up her judgment, the payment thereof by the transfer of property above set forth, amongst which was the Crescent plantation, of which she alleges continual possession since the transfer thereof; and she claims that the property seized belongs to her, and that it is not liable for her husband's debts. She asks for a judgment decreeing the seizure illegal.

The defendant answers that plaintiffs' judgment and the proceedings thereunder, are mere simulations, intended to place the property of her husband beyond the pursuit of his creditors, who had obtained and recorded judgments against him prior to her judgment, and the transfer thereunder. He sets up the marriage contract between the parties, on the faith of which, he alleges, he and others, transacted business with her husband and became his creditors, and he claims that her judgment as against him is an absolute nullity. Upon these issues the parties went to trial. There was judgment perpetuating the injunction, and the defendant has appealed. The whole case turns upon the validity of the marriage contract, about the existence and confection of

which there is no dispute; and the question propounded to us for answer is : Can parties, in Louisiana, by their marriage contract, agree that the property which they may acquire by succession, or donation, during marriage, shall fall into the community of acquets and gains? And herein (in this case) can the father and mother of the parties to the marriage, give the whole or a part of the property they may leave on the day of their decease for the benefit of the parties ?

If they can, the judgment appealed from is wrong.    If they can not, it is right.

Our law considers marriage in no other view than as a civil contract. C. C. 86.   Parties may stipulate as they like, provided the thing stipulated is not in contravention of a prohibitory law.   Any stipulation, therefore, in a marriage contract, which is not in violation of a prohibitory law, is binding upon the contracting parties, so long as the contract lasts.

Every marriage contracted in this State superinduces, of right, partnership, or community of acquets and gains, if there be no stipulation to the contrary.   C. C. 2399.

Parties may, by their marriage contracts, modify the legal community as they think fit, either by agreeing that the parties shall be unequal, or if specifying the property belonging to either of them, of which the fruits shall not enter into the partnership.   C. C. 2424.

They may stipulate that there shall be no community whatever.   C. C. 2332.   In other words, in our opinion, as we have before stated, they may make any stipulation in their contract which is not reprobated by law.

And "fathers and mothers, the other ascendants, the collateral relations of either parties to the marriage, and even strangers, may give the whole or a part of the property they shall leave on the day of their decease, both for the benefit of the parties and for that of the children to be born of their marriage, in case the donor survives the donee." C. C. 1735.

These are all stipulations which the law permits to be made in marriage contracts, which agreements may be altered by the husband and wife jointly before the celebration of marriage, but not afterward. Article 2329 declares, "Every matrimonial agreement can be altered by the husband and wife jointly, before the celebration of marriage, but it cannot be altered after the celebration."   As they bind themselves at the time of their marriage, so they remain bound so long as the marriage lasts.

These are the textual provisions of our Code, and we do not see how those who follow them can successfully assert that they have been acting in conflict with the law, or that a contract made under them is null and of no effect.   This question has, we think, already been re

viewed by this court. In the case of Fabre *v.* Sparks, 12 R. 31, it was stipulated in the marriage contract that "there shall be a community between them, the said parties, which shall comprehend all their estate, real and personal and to come." The court gave effect to the contract; and so it did in the succession of Mossy, 4 An. p. 339, where the same doctrine was recognized.

It was contended that, notwithstanding the stipulation to the contrary in the marriage contract, donations may be made to the wife which will be her separate property. And it was pressed upon us that inasmuch as the donations in this case were made by the father and mother, on account of the plaintiff's interest in his and his wife's succession, which appears by the testimony of the father, by the receipts of the husband, and by the act of sale and donation of certain landed property, in which it is stated that the amount of the purchase money advanced is to be considered as the paraphernal property of the plaintiff, these advances must be held to be her paraphernal property, subject to restitution by her husband.

We do not consider the question whether, notwithstanding the stipulation to the contrary in a marriage contract, the wife may receive donations which will be her separate property before us. Such a stipulation may have been a condition precedent to the marriage. It is a condition which the law does not prohibit parties from making. It is a stipulation which the law expressly allows fathers, mothers, collaterals and even strangers to make in favor of their children, relatives or friends, so far at least as relates to the property which the donors may leave at their death.

Whether this contract, once made, can be annulled by the parties who made it, in spite of the article of the code, or whether one of the parties, without the assent of the other may destroy it, is not for us now to determine. We are clear, however, upon this point, that the changing of such a contract would be, in reality, a new contract, and that, as such, it would have to be entered into by all those who were parties to the first contract, and that the stipulations to that effect should be positively stated. We do not discover that this has been done here. The husband, the wife and her father and mother, before the marriage, agreed amongst themselves that all property received by donation by either of the parties contracting marriage, during the marriage, should be community property.

Plaintiffs' father was, as we have seen, a party to that contract, and when he made the donations to her, giving the same to her husband, without referring in any manner to the stipulations in the marriage contract, he must, we think, be considered as having done so, with reference to that contract, by which he knew his donation would form part of the community between his daughter and her husband. We

think we must take his deeds to be a compliance with his words, and that when he declared the donations made by him to his daughter's husband should be considered as her paraphernal rights, his only object was to provide that the amounts should be deducted from his succession when it should come to be divided amongst his co-heirs. Otherwise, we think, he should have stated it, and the husband should have so accepted it, that the donations were to be her separate property, notwithstanding the marriage contract. At all events, we think it should have been in some way shown that it was their intention to destroy or modify the marriage contract. This was not done. On the contrary, to us, the donations seem to have been made in conformity therewith.

The marriage contract not having been abrogated when the donations and sale were made, the property conveyed formed part of the community of acquets and gains, and was liable for the community debts. The judgment under which the execution herein injoined issued, was to force the payment of a community debt, which existed when the judgment under which the plaintiff now claims, was rendered. The property being community property, the fruits thereof belong to the community, and are liable to seizure in payment of a community debt, and the injunction which restrains the execution under which it was seized therefor, improperly issued.

Plaintiff has plead the prescription of one year against the defendants' answer and pretensions. We do not see that the case is governed by any of the provisions of the article of the code regulating the prescription of one year.

It is therefore ordered, adjudged and decreed that the judgment of the district court be avoided, annulled and reversed, and that the injunction herein issued be dismissed, plaintiffs to pay costs in both courts.

Rehearing refussed.