## CLAY v. UNITED STATES.
### Civil Action No. 996.

District Court, E. D. Louisiana.
New Orleans Division.
May 23, 1946.

100

Arthur A. Moreno, of New Orleans, for plaintiff.

Herbert W. Christenberry, U. S. Atty., and Robert Weinstein, Asst. U. S. Atty., both of New Orleans, La., and Robert R. Reynolds, Jr., Sp. Asst. to Atty. Gen., for defendant.

BORAH, District Judge.

This action against the United States of America is brought under Section 24 of the Judicial Code (20), 28 U.S.C.A. § 41 (20), to recover $3,678.72 paid as deficiency income tax for the calendar year 1940.

The facts which give rise to this controversy have in the main been stipulated and the one and only point in dispute is whether plaintiff's husband did in fact manage and administer her separate property. The court is of the opinion that the fact in controversy does not control the legal issue which this case presents. Consequently I will not review the evidence but will be content to state my finding for the record and will incorporate same in the following:

### Findings of Fact

1. On February 1, 1943, and during the remainder of that month, Charles A. Donnelly was then Acting Collector of Internal Revenue in New Orleans, and was succeeded by Joachim O. Fernandez, as Collector of Internal Revenue.

2. Plaintiff is a resident of the. City of New Orleans, State of Louisiana, and timely filed her 1940 income tax return with Charles A. Donnelly, then acting as Collector of Internal Revenue in the City of New Orleans, and duly paid the taxes shown by the return for said year.

3. Following an audit of the income tax return of plaintiff for the taxable year ending December 31, 1940, plaintiff was advised by the Commissioner of Internal Revenue that there was a deficiency of $5,222.-59 for the year 1940, which was paid.

4. Thereafter plaintiff made a claim for a refund of the sum of $5,222.59 as shown by the claim for refund attached to the complaint, and that there was thereafter allowed her the sum of $2,125.22, representing the tax in the amount of $1,912.35, and interest of $212.87, paid to plaintiff by a check issued on January 4, 1944.

5. On January 27, 1944, plaintiff received a letter from Harold M. Graves, Acting Commissioner of Internal Revenue, disallowing the claim for refund of the remainder of the sum of $5,222.59 after the allowance, a copy of which letter is attached to the complaint.

6. The plaintiff is the owner of certain separate and paraphernal property which produced income during the years involved and such income was reported by the plaintiff in her federal income tax returns as community income. The Commissioner of Internal Revenue, however, held that such income constituted the separate income of the plaintiff and could not be reported as community income.

7. As a result of treating such income as separate income, not subject to a community return, there was thereby created a deficiency of $3,678.72.

8. On December 21, 1939, the plaintiff and her husband appeared before a notary public and executed a prenuptial contract listing in extenso the separate property of each spouse, and containing the following pertinent provisions:

"(1) There shall be a community of acquets and gains between the contracting parties from the date of the celebration of their said marriage to each other, which said community of acquets and gains shall embrace all future acquisitions and shall embrace only said future acquisitions, all

of their separate property herein specified and set forth to be and remain distinct and separate property and to form no part whatsoever of the said community of acquets and gains;

"(2) The debts contracted by each party hereto previous to the marriage to be entered into between them are to be paid by the party who shall have contracted same and without the property of the other party being in anywise liable for payment thereof; * * *

"(5) All property and effects of Mrs. Stuart Sanderson, widow of David Frank Dixon, Party of the Second Part, set forth and described hereinabove and owned by her at the time of the celebration of the intended marriage, together with all property and effects to be acquired thereafter and during the existence of said contemplated marriage, are hereby declared to be her separate and paraphernal property, and she does hereby expressly reserve unto herself the entire and complete administration and control of her separate property, both movable and immovable, whether now owned by her or hereafter acquired, in any manner whatsoever, and she does hereby expressly reserve unto herself the complete and free enjoyment, control and use of all of the revenues, income, produce, interest, and appreciation in value thereof."

9. After the marriage was solemnized, the husband of the plaintiff, contrary to the provisions of the prenuptial contract, in fact managed and administered the separate property of the plaintiff.

### Discussion

From the foregoing facts there arises for decision the question whether the income which plaintiff received during the calendar year 1940 constitutes community income, only one half of which is taxable to her, as she contends, or separate income taxable in full to plaintiff under Section 22(a) of the Revenue Act of 1938, 26 U.S. C.A. Int.Rev.Acts, page 1008, as determined by the Commissioner of Internal Revenue.

The plaintiff earnestly contends that the husband administered the plaintiff's separate property, and that therefore, under the law of Louisiana, the revenues therefrom fell into the community. This argument finds its basis in Article 2386 of the Louisiana Civil Code, which reads in part as follows:

"When the paraphernal (separate) property (of the wife) is administered by the husband, or by him and the wife indifferently, the fruits of this property, whether natural, civil, or the result of labor, belong to the conjugal partnership, if there exists a community of gains. * * *"

The argument is not persuasive. An examination of the other codal provisions on the subject, as interpreted by the Supreme Court of Louisiana, reveals beyond question that Article 2386 applies only when its provisions do not run contrary to the stipulations of a prenuptial contract. Or to state the proposition in different language, the terms of such a contract prevail over any written or oral agreement entered into by the parties after the marriage has been solemnized. A fortiori, the rules of property laid down in the contract override any tacit understanding or any conduct of the parties during the existence of the marriage.

Article 2329 of the Civil Code provides in part as follows:

"Every matrimonial agreement can be altered by the husband and wife jointly *before* the celebration of the marriage; but it cannot be altered *after* the celebration. * * *" (Emphasis supplied.)

Construing this article, the Supreme Court of Louisiana, in Desobry v. Schlater, 25 La.Ann. 425, 428, said:

"These are all stipulations which the law permits to be made in marriage contracts, which agreements may be altered by the husband and wife jointly before the celebration of marriage, but not afterward. (After quoting the pertinent sentence from Article 2329, the court continued:) *As they bind themselves at the time of their marriage, so they remain bound so long as the marriage lasts.*" (Emphasis supplied.)

See also "Post-Nuptial Alteration of Ante-Nuptial Agreements," by Gordon Ireland, Tulane Law Review, Vol. IX, No. 2, February, 1935, pp. 269-274.

If the plaintiff's theory embraces the argument that Article 2386 is applicable despite the stipulation in the prenuptial con-

tract, because the wife permitted the husband to manage and administer her paraphernal property, the answer again is to be found in the jurisprudence of the state.

This precise situation was presented in Hanley v. Drumm, 31 La.Ann. 106, 110, 111, and the court said:

"But it is said the parties by their subsequent acts and conduct have shown that it was not their intention to make this $4000 community property. The answer to this is, that marriage contracts can not be changed or altered after marriage, even by formal agreement, much less by indirection, *by acts and declarations.* Their contract was reduced to writing. It cannot be varied by what was said before, at the time of, or after its confection * * *." (Emphasis supplied.)

 Article 2329 of the Code, and the jurisprudence construing it, make it plain that in Louisiana a prenuptial agreement is an exception to the general law of contracts, which is to the effect that they who make an agreement may, by mutual consent, amend it or abrogate it altogether. In this state, a prenuptial contract freezes the rights of the parties into immutability. Its provisions, once the marriage is celebrated, cannot be changed so long as the marriage lasts.

This being true as between the parties themselves, it is a fortiori true in cases where, as here, the rights of third parties are involved.

Having the foregoing principles in mind, we find that Paragraph 5 of the prenuptial contract specifically and unequivocally provides that the property described in detail therein, "together with all property and effects to be acquired thereafter and during the existence of said contemplated marriage, are hereby declared to be her separate and paraphernal property," and that "she does hereby expressly reserve unto herself the entire and complete administration and control of her separate property, both movable and immovable, whether now owned by her or hereafter acquired, in any manner whatsoever."

Finally, as if to put the matter beyond cavil, Paragraph 5 sets forth:

" * * * she does hereby expressly reserve unto herself the complete and free enjoyment, control and use of all of *the revenues, income, produce, interest, and appreciation in value thereof."* (Emphasis supplied.)

The foregoing plain, explicit and emphatic provisions of the marriage contract compel the court to reach the following

### Conclusions of Law

1. The Commissioner of Internal Revenue was correct in treating the income from the plaintiff's separate property as her separate income and not as community income.

2. So treating the said income of the plaintiff, the Commissioner was correct in making a deficiency assessment against her in the amount of $3,678.72.

3. The Commissioner is entitled to a judgment dismissing the complaint, together with costs.

Let judgment be entered accordingly.