## CLAY v. UNITED STATES.

### No. 11784.

Circuit Court of Appeals, Fifth Circuit.

May 16, 1947.

Arthur A. Moreno, of New Orleans, La., for appellant.

Sewall Key, Acting Asst. Atty. Gen., Newton K. Fox, Sp. Asst. to the Atty. Gen., both of Washington, D. C., Herbert W. Christenberry, U. S. Atty., and Robert Weinstein, Asst. U. S. Atty., both of New Orleans, La., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

LEE, Circuit Judge.

In her income tax return for the year 1940, appellant reported as community income the income from certain of her separate properties. The Commissioner ruled the income appellant's separate income, taxable to her, and levied a deficiency assessment. Appel-

lant paid the assessment and filed a claim for refund; upon payment being refused, this suit was brought to recover the amount of the claim. The court below sustained the Commissioner, and appellant prosecuted this appeal.

The sole question is whether income from separate property of the taxpayer, where property and income were excluded from the community by prenuptial contract, constitutes, when the property is administered by the husband, community income, one-half of which is taxable to appellant, or separate income, taxable in full to appellant.

On December 21, 1939, prior to their marriage, Louis House Clay and Mrs. Stuart Sanderson, widow of David F. Dixon, residents of New Orleans, Louisiana, entered into an agreement. The pertinent parts of this agreement recite:

"Whereas a promise of marriage exists between them, which is to be duly solemnized and celebrated according to law shortly after the execution of this act, they have in consequence thereof entered with each other into the following stipulations *as regulating the conjugal community that will result from their contemplated marriage,* to-wit: [Emphasis added.]

"(1) There shall be a community of acquets and gains between the contracting parties from the date of the celebration of their said marriage to each other, which said community of acquets and gains shall embrace all future acquisitions and shall embrace only said future acquisitions, all of their separate property herein specified and set forth to be and remain distinct and separate property and to form no part whatsoever of the said community of acquets and gains:

"(2) The debts contracted by each party hereto previous to the marriage to be entered into between them are to be paid by the party who shall have contracted same and without the property of the other party being in anywise liable for payment thereof;"

A description of the separate properties owned by each was followed by this provision with respect to the taxpayer: "(5) All property and effects of Mrs. Stuart Sanderson, widow of David Frank Dixon, * * * set forth and described hereinabove and owned by her at the time of the celebration of the intended marriage, together with all property and effects to be acquired thereafter and during the existence of said contemplated marriage, are hereby declared to be her separate and paraphernal property, and she does hereby expressly reserve unto herself the entire and complete administration and control of her separate property, both movable and immovable, whether owned by her or hereafter acquired, in any manner whatsoever, and she does hereby expressly reserve unto herself the complete and free enjoyment, control and use of all of the revenues, income, produce, interest, and appreciation in value thereof."

The income in question is largely made up of dividends from stocks listed in the prenuptial agreement as taxpayer's separate property. The contention is made that following the marriage her husband administered the separate properties of the taxpayer, and, hence, under the Louisiana law, the income from said properties fell into the community of acquets and gains existing between them. R.C.C. art. 2386. The court below found for the taxpayer with reference to the administration of her separate property by her husband, but held that, under the prenuptial agreement, the fact of the husband's administration was without legal significance; that the community of acquets and gains was subject to the modifications of the prenuptial agreement and that, under that agreement, the wife had retained complete administration and control of her separate property and had expressly reserved unto herself the complete and free enjoyment, control, and use of all of the revenues therefrom; that the provisions of such contract were not subject to change by the parties subsequent to their marriage; and that, therefore, the income in question was the taxpayer's separate income.

Here, the taxpayer urges that: the recital of the agreement that properties owned by each of the contracting parties prior to marriage should remain the property of each; the recital that these properties would be under the administration of the respective parties; the recital that a community of ac-

quets and gains should exist between them; and the recital that the community should embrace all future acquisitions—are all recitals of the provisions of the law itself. It is argued that the prenuptial contract merely states the result flowing from the marriage with respect to properties then owned and to be thereafter acquired; and that, as the contract contained no provision against the operation of the Louisiana law with respect thereto, the income of the wife from her separate property fell into her separate estate only so long as she had the administration and control; and, when such ceased and her husband took over, the income thereafter fell into the marital community under the provisions of the general law.

The preamble to the prenuptial agreement stated that its stipulations should regulate "the conjugal community that will result from their contemplated marriage." The first article of the Civil Code dealing with the marriage contract provides with respect to antenuptial agreements: "In relation to property, the law only regulates the conjugal association, *in default of particular agreements,* which the parties are at liberty to stipulate as they please, provided they be not contrary to good morals, and under the modifications hereafter prescribed." R.C.C. art. 2325. (Emphasis added.)

The modifications thereinafter prescribed are that the parties may not contract in order to alter the regular order of descent, or provide against the power of a husband as the head of the family, or attempt to vary "from the prohibitory dispositions of this Code." R.C.C. arts. 2326 and 2327.

Article 2329 then follows with the statement that a prenuptial agreement can be altered by the husband and wife jointly before the celebration of the marriage, but it cannot be altered after the celebration. In dealing with the community, the Code provides: *"2332. Community of acquets or gains—Modification or abrogation by agreement.*—The partnership, or community of acquets or gains, needs not to be stipulated; *it exists by operation of law, in all cases where there is no stipulation to the contrary.* [Emphasis added.]

"But the parties may modify or limit it; they may even agree that it shall not exist."

*"2424. Modification of legal community by contract.*—Married persons may, by their marriage contract, modify the legal community, as they think fit, either by agreeing that the portions shall be unequal, or by specifying the property, belonging to either of them, of which the fruits shall not enter into the partnership."

Reading the provisions of articles 2325, 2329, 2332, and 2424, together, the conclusion is inescapable that the Louisiana law "only regulates the conjugal association, in default of particular agreements." Where no agreement is entered into prior to marriage in Louisiana, the marriage by operation of law creates a "legal community." Where a prenuptial agreement is entered into a "contractual community" is created. Hanley v. Drumm, 31 La.Ann. 106, 110.

In Deshautels v. Fontenot, 6 La.Ann. 689, the court had before it the question whether a child born to a female slave owned by the wife prior to her marriage was her separate property or belonged to the community between her and her husband. Their marriage took place in 1806, prior to the adoption of the Code of 1808. Under the law at the time of the marriage, a child of a female slave, who was separately owned by the wife, became community property; by the adoption of the Code of 1808, such child, under that Code, became the separate property of the wife. The child was born after adoption of the Code, and the court held that the change in the law made by the Code governed. In discussing the matter, the court, after calling attention to the fact that no prenuptial contract had been entered into, said the matter of the regulation of the community had been left to the operation of the law, subject to such changes as might be made from time to time by the legislature. The court said: " * * * In the absence of an agreement of the parties, the correct view to take of their contract [of marriage], is, that they submitted the regulation of their marital rights to the existing laws, subject to such changes by general laws, as might be adopted by the legislative power of the government, * * *."

By stipulating in prenuptial contract what was community and what was

610

separate property, the taxpayer and her husband regulated the legal results of the marriage. The provisions with respect to property rights similar to those of the existing law do not bring the contract under the operation of that law. The regulations prescribed in the prenuptial agreement irrevocably governed the community and separate rights. Any change made by legislative power would have no effect thereon. The absence of a provision that the general laws of Louisiana should regulate the community made inoperative those laws in community regulation. Thus the parties created a community no statutory change could alter.

■ Articles 2334, 2385, 2386, and 2402 of the Civil Code define what property is separate and what community.* These articles are restrictive and mandatory only where there is no prenuptial agreement.

" * * * it is said that art. 2371 [now article 2402] prescribes and specifies of what the community is composed. That it is restrictive and mandatory. That article regulates and defines the 'legal community' not

---

* "2334. Separate and common property of spouses.—The property of married persons is divided into separate and common property.

"Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.

"The earnings of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offenses and quasi offenses and the property purchased with all funds thus derived, are her separate property.

"Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.

"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it can not be mortgaged or sold by the husband without her written authority or consent. [As amended, Acts 1912, No. 170; 1920, No. 186.]"

"2385. Wife failing to administer paraphernal property—Management by husband.—The paraphernal property, which is not administered by the wife separately and alone, is considered to be under the management of the husband."

"2386. Fruits of paraphernal property—Ownership—Reservation by wife.— The fruits of the paraphernal property of the wife, wherever the property be located and however administered, whether natural, civil, including interest, div-idends and rents, or from the result of labor, fall into the conjugal partnership, if there exists a community of acquets and gains; unless the wife, by a written instrument, shall declare that she reserves all of such fruits for her own separate use and benefit and her intention to administer such property separately and alone. The said instrument shall be executed before a notary public and two witnesses and duly recorded in the conveyance records of the parish where the community is domiciled.

"If there is no community of gains, each party enjoys, as he chooses, that which comes to his hand; but the fruits and revenues which are existing at the dissolution of the marriage, belong to the owner of the things which produce them. [As amended, Acts 1871, No. 87; 1944, No. 286, § 1.]"

"2402. Property forming community— Personal injuries to wife.—This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; 'provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.' [As amended, Acts 1902, No. 68.]"

the conventional community. *It provides for the case where there is no agreement of parties, when they have been silent. It has no reference* to the cases foreseen by articles 2305 [now 2325] and 2393 [now 2424], where the parties have modified by agreement the extent and character of the conjugal partnership.

" * * * it is said the parties *by their subsequent acts and conduct* have shown that it was not their intention to make this $4,000 community property. *The answer to this is, that marriage contracts can not be changed or altered after marriage, even by formal agreement, much less by indirection, by acts and declarations.* Their contract was reduced to writing. It can not be varied by what was said before at the time of, or after its confection * * *." (Emphasis added.) Hanley v. Drumm, 31 La.Ann. 106, 110. See also Desobry v. Schlater, 25 La. Ann. 425, and Succession of Hollander, 208 La. 1038, 24 So.2d 69.

█ We agree with the court below that the income in question was governed by the prenuptial agreement and that, under the prenuptial agreement, it was the separate income of the wife.

While a discussion of it is not necessary to this decision, we are not in accord with the finding of the court below that the stocks from which the income was derived was under the administration of the taxpayer's husband. He was not a director in any of the corporations issuing the stocks, and, while officers of the corporations consulted him from time to time with respect to policy, his advice was not binding upon them. The officers were free to accept or reject it as they saw fit. The administration of the corporations was in the hands of the officers and directors, not of the taxpayer's husband. He attended stockholders' meetings with an express power of attorney from his wife to act for her and in her behalf. His appearance for her at stockholders' meetings was, in legal effect, her appearance. " * * * It is well settled that the wife may administer her paraphernal property through the agency of the husband, and that *she may avail herself of his assistance* if he is willing to render it, provided he act under her authority, and merely as her proclaimed agent. Such acts, though performed by the husband, are the acts of the wife. '*Qui facit per alium, facit per se.*' She has all the power of a *feme sole* in regard to the management of her separate property, including the power to employ agents. See [Barataria & L.] Canal Co. v. Field, 17 La. 421, 426; Jordan v. Anderson, 29 La.Ann. 749; Miller v. Handy, 33 La.Ann. 160." (Emphasis added.) Colvin v. Johnston, 104 La. 655, 663, 29 So. 274, 277.

Again, in Miller v. Handy, 33 La.Ann. 160, 163, the Supreme Court said:

"The Code emphatically declares that 'the wife has the right to administer personally her paraphernal property without the assistance of her husband.' Rev.C.C. 2384.

"The terms, 'without assistance,' as used in this article, mean, unquestionably, *without his control,* without the necessity of being thereunto authorized by him, as is the case with many of her acts. It is not incompatible with her personal administration that she should avail herself of the assistance of her husband, if he is willing to render it, provided he act under her authority and merely as her proclaimed agent. Such acts, though performed by him, are still the acts of the wife, under the maxim '*Qui facit per alium, facit per se.*'" (Emphasis added.) Cf. Simoneaux v. Helluin, 27 La.Ann. 183, and Reynolds v. Rowley, 2 La.Ann. 890, 893.

The judgment appealed from is affirmed.