REDMANN, Judge.
The Trane Company sues for the price of air conditioning equipment it shipped to defendant Christina with the understanding it was for a building project of the defendant Guastella partnership, which (together with its individual members, also defendants) had given Trane a continuing guaranty of certain of Christina’s debts. The guaranty stipulated 15% attorney’s fee. Denying liability, Christina and the Guas-tellas each alternatively sought indemnity from the other.
From a judgment for Trane against the Guastella partnership and individuals for the price of the equipment (without attorney’s fee), all parties appeal.
The equipment here involved is related to a second building constructed on land owned by Chef, Inc., a corporation to whose stock title was then held by the Guastellas’ nominees.
A first building had been built, under a contract between Chef and Guastella Construction Company (the defendant partnership), on which Christina was the air conditioning subcontractor.
Christina’s prior purchases from Trane were in small amounts, and Trane was unwilling to extend him unsecured credit for the amounts anticipated. Trane therefore obtained the Guastella continuing guaranty, part of which is set forth in a footnote.[1]
*64 The first building required 30 tons of cooling and a chilled water system was used. Because a second building was contemplated, the system was designed with a 60-ton capacity cooling tower although only a 30-ton chiller was used. Space was reserved for a second 30-ton chiller (for which pipe stubs were placed in the concrete slab).
There was not, at that time, any commitment by anyone to build the second building, much less to use the Trane equipment or a central, chilled-water system. It was, nevertheless, obviously the original plan, and this circumstance corroborates the testimony of Christina (and of his employee Sanchez) that Rosario Guastella, Jr. verbally agreed with Christina that Christina would do the air conditioning work on the second building and that Christina should order the Trane equipment for the second building.
Guastella denies this, pointing out the corroborative circumstance that at about the same time as the alleged agreement and authorization, the first building was completed and immediately there was trouble with the air conditioning. (The principal immediate difficulty was with solenoid valves, not made by Trane, at the individual room remote units, which would stick open or closed because of some gritty substance in the chilled water, not shown to be attributable to Trane.)
In fact Christina did order the 30-ton chiller and 48 remote fan and coil units and accessory equipment. Because the remote units are needed earlier in construction, they were shipped first.
Meanwhile, the construction contract for the second building was confected between Chef, Inc. and Guastella Construction Company, Inc., a corporation rather than the similarly named partnership.[2] Nevertheless, although Christina did in fact do the second building’s air conditioning work (using another manufacturer’s equipment), it did so under contracts giving the partnership’s name as a contracting party.
The trial court evidently accepted Christina’s version of the circumstances surrounding the ordering of the Trane equipment. There was ample evidence to support that version, and we are therefore unable to say the court erred.
The trial court was correct in holding the Guastellas liable on their continuing guaranty, and in disregarding the circumstance that the Guastellas had their construction corporation named as the general contractor on the second building. Christina was evidently not made aware of that circumstance, and as far as Trane was *65 concerned the second order was an expected (though not assured) sequel to the first order. The second was “in connection with * * * dealings or activities” entered into by Christina with the Guastellas, and the Guastellas guaranteed its payment.
 However, it is difficult to reconcile dismissal of Trane’s claim against Christina, the primary obligor, with judgment against the Guastellas, the secondary obligors. The sole source of liability to Trane that we find is the continuing guaranty. Perhaps the characterization of a letter of credit as mandate in Gasquet v. Thorn, 14 La. 506, 509 (1840), was the source of treating the continuing guarantor as if a principal, and the debtor as his agent. The problem of the accessory character of suretyship, C.C. art. 3035, may suggest that “future suretyship” cannot subsist since there is no present principal obligation, and thus the explanation of mandate may be given. We deem it altogether adequate for our purposes to characterize the “continuing guaranty” as a continuing and divisible offer to become surety for a total not exceeding $30,000, acceptable by extending credit to Christina from time to time in connection with Guas-tella projects. The offer to become guarantor was accepted by the credit sale to Christina of the goods shipped, for a Guas-tella project.
The theory that Christina (and the Guastellas) could refuse to accept the new equipment because of the unsatisfactoriness of the first system is not supported by the evidence.
The principal trouble was caused by foreign matter in the chilled water lines, and this problem was never shown to be Trane’s fault. The matter may have been dirt introduced into the lines, or a precipitate from the water used, or something else. There was testimony that a testing laboratory made some test of this matter, but no evidence of the test results was introduced. We draw no unfavorable inference from this absence, but we do hold that it was not proven that Trane’s equipment was defective in this respect.
A second problem arose from the imbalance between 30-ton chiller and 60-ton cooling tower. This imbalance was not Trane’s design, and Trane did offer advice to eliminate or reduce the problem.
We also note that Trane offered to accept return of the equipment if paid a fee of “about $1,600” plus freight, but this offer was rejected by Christina because the Guastellas would not agree to pay half of the costs. Trane’s offer arose because it had a customer in Denver who had need for equipment of somewhat similar specifications and who would, for speedy delivery, have accepted this equipment.
We conclude, in summary, that Christina had a verbal contract with the Guastella partnership to install the second air conditioning job using Trane equipment; in connection with that agreement with the partnership he had Trane manufacture the equipment and ship it to him on credit; and he is primarily liable to Trane and the Guastellas and their partnerships are secondarily liable because of their guaranty.
The Guastellas and their partnership cannot, however, be liable for the stipulated 15% attorney’s fee. “The surety-ship can not exceed what may be due by the debtor, nor be contracted under more onerous conditions. * * * The surety-ship which exceeds the debt or which is contracted under more onerous conditions shall not be void, but shall be reduced to the conditions of the principal obligation.” C.C. art. 3037. Here the principal obligation (that of Christina) did not stipulate attorney’s fees for enforcement, and the accessory promise (C.C. art. 3035) of the surety cannot be enforced on more onerous conditions.
In respect to the third-party demands for indemnification, we conclude Christina is entitled to be held harmless by the Guastella partnership, whose contract with him obliged him to order the equip *66 ment which the partnership refused to accept.
The judgment is affirmed in part and reversed in part; there is judgment for the Trane Company against Charles J. Christina and Guastella Construction Company, a partnership, and its members individually, Rosario J. Guastella, Sr., Rosario J. Guastella, Jr. and Robert J. Guastella, all in solido, for $8,380.45 with legal interest from judicial demand and all costs; and there is judgment over in favor of Charles J. Christina against the Guastella Construction Company, the partnership, for the full amount of any execution against Christina of the solidary judgment against him and the partnership and the Guastel-las.

. In Consideration of the giving or extending of credit (whether by the sale of merchandise on credit, the making of a loan, renewal of a loan, the extending of the maturity therefor, or otherwise) by The Trane Company * * * (hereinafter referred to as “Lender”) to Charles J. Christina, Jr., * * * (hereinafter referred to as “Borrower”), in connection with or in furtherance or fulfillment of any and all undertakings, sales, contracts, subcontracts, .agreements or other dealings or activities entered into by said Borrower with the undersigned, Guastella Construction Company, a Louisiana partnership * * * composed of [the Guastellas] * * * and [the Guastel-las] * * * in their individual capacities (hereinafter referred to as the “Undersigned”), the Undersigned hereby give and grant this Continuing Guaranty to and in favor of Lender and hereby guar *64 anty the payment in full of any and all indebtedness and/or obligation of Borrower to Lender, * * * as a result of the extension of credit * * * in connection with or in furtherance or fulfillment of any and all undertakings, * * entered into by said Borrower with the Undersigned, up to the sum of $30,000.00 plus all interest, attorney fees and other charges now due and owing or hereafter, from time to time, to be or become due and owing by Borrower to Lender.
*****
Notice of acceptance of this Continuing Guaranty and of any indebtedness covered * * * are hereby severally waived. * * * This guaranty shall continue in full force and effect until written notice of its discontinuance as to any of the Undersigned shall be served by said Undersigned upon one of the executive officers of Lender, * * *. In case any of the obligations guaranteed hereunder or any part thereof should be placed in the hands of an attorney at law for collection after maturity or upon default, or in case legal proceedings are instituted for recovery thereof, * * * the Undersigned herein and hereby agree to pay the fees of the attorney * * * which fees are hereby fixed at 15% of the amount then sought to be collected or protected.

. Rosario Guastella, . Jr. testified: “Q. Gould you explain to me the reason why in one case you have a contract signed by the Guastella Construction Company and another was signed by Guastella Construction Company, Inc.? A. It’s quite simple, it all depends which company you want to put the profits for the year and your depreciation.”