342 So.2d 226 (1976)
PARISH OF EAST BATON ROUGE
v.
The TRAVELERS INSURANCE COMPANY et al.
No. 11011.
Court of Appeal of Louisiana, First Circuit.
December 30, 1976.
Rehearing Denied February 14, 1977.
Writ Refused April 6, 1977.
*227 Joseph F. Keogh, Parish Atty., and Frank J. Gremillion, Asst. Parish Atty., Baton Rouge, of counsel, for Parish of East Baton Rouge.
Frank P. Simoneaux, Breazeale, Sachse & Wilson, Baton Rouge, of counsel, for The Travelers Ins. Co.
John E. Seago, Baton Rouge, of counsel, for East Glen Oaks, Inc.
Before LANDRY, COLE and CLAIBORNE, JJ.
CLAIBORNE, Judge.
This is a suit on a bond written by The Travelers Indemnity Company securing a contract between the Parish of East Baton Rouge and East Glen Oaks, Inc. (hereinafter called East) for certain street improvements. From a judgment dismissing the suit plaintiff appeals. We reverse.
In 1972, the Parish made basic plans for the improvement of Lanier Drive from Roberts Canal to Mickens Road. East was then developing a subdivision in that area and also desired that the Lanier Drive work be done. After some consideration of the matter, it was determined that the Parish would participate in the project to the extent of $35,000.00 which would be paid directly to the developer; in return, East was to complete that portion of Lanier Drive according to approved plans and was to also formally dedicate to the Parish an 8.085 acre right of way on Roberts Canal.
To expedite the release of the money, on February 19, 1973, Mr. Marshall A. Smith, the President of East, forwarded to Mr. Ray W. Burgess, Director of the City-Parish Department of Public Works, a copy of its acquisition of the property to be subdivided and a construction contract for the Lanier Drive work. That contract was entered into on February 16 and was between *228 Smith's corporation and the street contractors, Dale Development Corporation (hereinafter called Dale) and Magnolia Construction Company (hereinafter called Magnolia) jointly. A Travelers' bond was issued by the Allen-Hickman-Jones Agency to Magnolia for the project. (The bond was either not executed or later considered cancelled because of voiding of the principal agreement.)
In the weeks that followed, it was determined by the developers that the Lanier Drive improvements should be part of a larger overall subdivision plan. Therefore, the contract of February 16 was rescinded by the mutual consent of the parties.
On April 23, 1973, Mr. Burgess forwarded a memorandum to the Parish Attorney's Office indicating that the cost of the Lanier Drive work had been properly estimated and that with the dedication of the acreage and the posting of a proper bond, the $35,000.00 could be paid over to East. On that day, the bond at issue herein was purchased by Smith from the Allen-Hickman-Jones Agency and delivered to the Parish. The premium in the amount of $1,789.00 was paid. The bond contains the following provisions:
"THE CONDITIONS of this obligation are such that whereas, the above named principal, East Glen Oaks, Inc., did on the 23rd day of April, 1973, enter into a certain contract with the Mayor-President of the City of Baton Rouge, Parish of East Baton Rouge, Louisiana to build or construct streets, curb and gutters, drainage and sewerage facilities in East Glen Oaks Subdivision (Lanier Drive), Baton Rouge, Louisiana in accordance with the plans and specifications prepared by Aries Engineering and approved by the Department of Public Works of the Parish of East Baton Rouge;"
Thereafter, the $35,000.00 was released to East Glen Oaks, Inc. In September, 1973, that corporation defaulted on the Lanier Drive project and the Parish initiated a claim on the bond which was eventually denied by The Travelers. Litigation ensued and judgment was subsequently rendered in the District Court in favor of the Parish against East Glen Oaks, Inc. by confirmation of default prior to trial of the contested matters which resulted in judgment dismissing the suit as to The Travelers.
The plaintiff originally alleged that the bond secured a written subdivision agreement dated April 23, 1973. It amended to allege that it secured a written construction contract dated February 16, 1973. Later at the pre-trial conference plaintiff contended there was a written construction contract dated April 23, 1973. At trial no written contract of either kind between the Parish and East Glen Oaks was produced. (A written building contract between East and Dale and Magnolia dated February 16, 1973 was introduced.)
In its written reasons for judgment, the trial court concluded that The Travelers was not liable primarily because the principal contract did not exist as described on the face of the bond. Therefore, the accessory agreement concept basic to our law of suretyship was not satisfied.
All parties agree that there must be an underlying contract to support an obligation of suretyship. Civil Code Articles 3035, 3036 and 3039, which are applicable, do not provide that an agreement of suretyship must be accessory to a written contract. In Trane Company v. Christina, 260 So.2d 62 (La.App., 4th Cir. 1972), it was recognized that an unwritten agreement can be the basis for a valid contract of suretyship. See also 39 Tulane Law Review 427. The present inquiry is, therefore, whether a binding contract of any nature, written or oral, was entered into between East and the Parish, and if so, whether it was described in the bond and contemplated thereby.
The record shows that an oral contract existed between those two parties. Parish Council Resolution 10289, which amended a resolution of April 12, 1972, authorized Burgess to enter into the agreement. As previously noted, the plaintiff's offer was to pay $35,000.00 directly to East if it would dedicate certain property, do *229 certain street work according to plans approved by the Parish, and post a proper bond. Smith, for his corporation, readily and expeditiously accepted the offer by complying with each of these requirements. On April 23, 1973, he dedicated the property and posted the required bond; on the following day, he paid the bond premium. Prior to that date, he had submitted plans for the street work which were approved by the Parish. On April 24, the Parish issued its check to the corporation and thereafter the work was begun and partially completed. We conclude an oral contract was entered into on April 23, 1973, the date it must be deemed to have been accepted.
It is further contended the surety was not aware of the true nature of the principal obligation, and the bond was issued on the belief it was to secure a subdivision agreement. The testimony of the employees of the agency and the surety reveals this argument represents an afterthought. They related that in the day to day operation of the bonding business, The Travelers never received or relied upon the contract for which a bond was issued and as a general rule a close scrutiny of the underlying agreement was practically never performed by anyone. In the present case no effort was made to see or obtain a copy of the principal agreement, although defendant contends their bond contemplated a written subdivision agreement. A memorandum from The Travelers' office to the agency shows that their only requirement for information as to East Glen Oaks, Inc. was a single financial statement of the corporation, in spite of the fact that they contended they usually required more assurances of financial responsibility when a subdivision bond was involved. A letter by Mr. Leon B. Dartois, Jr., a bond officer for The Travelers, to his home office, dated September 5, 1975, said in part:
". . . Initially I authorized a performance bond for Magnolia Construction Company, Inc., with East Glen Oaks, Inc., as obligee. Naturally, we requested and received copies of the financing committments for the project in question. However, in my absence someone from the Allen-Hickman-Jones agency contacted Rod Kuntel for a switch from the aforementioned performance bond to the captioned subdivision bond. Obviously, there is a vast difference in the content of and need for the `financing agreements' for each bond.
"I did not immediately notice the change from a performance bond for Magnolia to a subdivision bond for East Glen Oaks, as each is in support of the same work with the same contract price. I accept full responsibility for this oversight. At the time all facts were brought to light, the job was approximately 50% complete, and Louis Selig ____ indicated payments on his estimates were timely. Further, as indicated on the S-364, Louis has a minor personal interest in this venture, and East Glen Oaks is run by a number of prominent residents of Baton Rouge, La. Consequently, I did not deem it feasible to request escrow arrangements for the latter portion of the project. Presently, the project is substantially complete with all parties concerned being satisfied.
"Don, please rest assured we fully appreciate our exposure in this matter, and all future obligations will have the appropriate `financing commitments'. Trusting you will find the foregoing in order, we remain with best regards . . ."
Thus, even when the facts were known to the surety here, no action was taken on their part to repudiate or alter the agreement and, by their actions, they have ratified the contract of suretyship. Other letters by The Travelers introduced further evidence ratification. The judgment of the trial court will, therefore, be reversed and judgment rendered in favor of the plaintiff as prayed for. The Appellee will pay all costs for which it is liable under the law.
Reversed and rendered.

ON APPLICATION FOR REHEARING
PER CURIAM.
In application for rehearing The Travelers Insurance Company alleges numerous *230 errors in our original decree. We find only one which merits discussion, namely, our finding of ratification.
As stated in our initial opinion, an oral agreement may constitute the basis for a valid contract of suretyship. We found that an oral agreement resulted from Burgess' letter of April 23, 1973, coupled with the prior and subsequent agreements and actions of the representatives of the City of Baton Rouge and the agents of East Glen Oaks, Inc. We likewise found that Travelers bond made reference to the agreement of April 23, 1973. We stand on our finding that the bond issued by Travelers is valid in that it was issued incident to a contract of which Travelers was aware. Whether the contract was written or verbal is a matter of no moment.
For these reasons we delete, as dicta, all reference in our original decree to the doctrine of ratification.
Application denied.