**SHELL OIL COMPANY**

v.

**The S.S. ORIENT CORAL, its engines, tackle, apparel, furniture, etc., *in rem,* et al.**

**SHELL OIL COMPANY**

v.

**The S.S. ORIENT CORAL, its Engines, Tackle, Apparel, Furniture, etc.**

Civ. A. Nos. 80–3971, 81–3727.

United States District Court, E. D. of Louisiana.

Oct. 21, 1982.

Thomas G. O'Brien, Adams & Reese, New Orleans, La., for plaintiffs.

Gregg L. Spyridon, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for defendant.

## MEMORANDUM AND ORDER

MENTZ, District Judge.

On or about September 13, 1980, the vessel S.S. ORIENT CORAL allegedly collided with a Shell Oil Company ("Shell") platform in the Gulf of Mexico, outside the territorial waters of Louisiana. Shortly thereafter, Shell filed suit and seized the vessel. To secure the vessel's release, Steamship Mutual Underwriting Association (Bermuda), Ltd. ("Steamship Mutual"), the vessel's underwriter, issued a letter of undertaking to Shell. Shell now contends, in its Supplemental and Amending Complaint, that this letter is a suretyship agreement and that Shell is therefore entitled to bring a single action against both the principal debtor, the S.S. ORIENT CORAL, and the surety, Steamship Mutual.[1] Steamship Mutual objects to both contentions. The matter before the Court is a motion to dismiss the Supplemental and Amending Complaint against Steamship Mutual.[2]

---

1. See LSA–C.C. art. 3051. The relevant sentence in that Article reads:

"The creditor may include in the same suit, both the debtor and the surety."

2. In its original complaint, filed after the ves-

■ The applicable law here is that of the State of Louisiana. *Alcoa Steamship Company v. Charles Ferran & Company,* 383 F.2d 46 (5th Cir. 1967), *cert. denied,* 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968). In applying that law in this dispute, a reasonable place to begin is with Article 3035 of the Civil Code. That Article defines suretyship as "an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not." Standing alone, however, Article 3035 does not answer the following question: Must the obligation of the principal debtor arise in contract or might the obligation also arise in tort? This question is important here because the obligation of the S.S. ORIENT CORAL to Shell stems from an alleged collision, a tort, not from any contract between Shell and the vessel's owners.

According to Steamship Mutual, the answer to the question can be found in Code Article 3036. The relevant part of that Article states that "Suretyship can only be given for the performance of valid contracts." Steamship Mutual maintains that this language clearly requires that the principal debtor be bound by contract. The case of *East Baton Rouge Parish v. Travelers Insurance Company,* 342 So.2d 226 (La. App. 1st Cir. 1977) *writ refused,* 344 So.2d 5, provides some support for this argument. Referring there to Articles 3035 and 3036, the court stated, apparently with approval, that "All parties agree that there must be an underlying contract to support an obligation of suretyship." 342 So.2d at 228.

The Court here is not convinced, however, that Article 3036 supports Steamship Mutu-

al's argument. The Article itself is ambiguous. It refers solely to the performance of "valid contracts." Now, while the Article can be construed in precisely the way Steamship Mutual suggests, it can also be construed, perhaps even more plausibly, in a much narrower way; namely, as suggesting no more than that, if suretyship is given for the performance of a contract, the contract in question must be valid. On this latter interpretation, the Article does not require that the underlying obligation be contractual. The Article is silent on this point. Stated more formally, the problem with Steamship Mutual's argument is this: From the fact that suretyship cannot be given for the performance of invalid contracts, it does not follow that suretyship can only be given for the performance of contracts. This being so, Article 3036 cannot settle the question whether suretyship can be given for the performance of obligations that arise in tort.

■ The Code Article that settles the question in most cases is 1771. That Article provides, in part, that "an accessory contract is made for assuring the performance of a prior contract." This means that a person cannot ordinarily be a surety unless the principal debtor is bound to the creditor in contract; or, what amounts to the same thing, suretyship can ordinarily be given only for the performance of contracts. At least two conditions must generally be satisfied, then, before a suretyship agreement exists. First, the principal debtor must be bound in contract to the creditor. Second, the contract in question must be valid. Since in this case the obligation of the principal debtor to the creditor arose in tort, not in contract, Steamship Mutual is

sel's release, Shell argued that Steamship Mutual was directly liable under Louisiana's direct action statute, LSA–R.S. 22:665. The Louisiana Supreme Court has limited the scope of that statute to circumstances where either the accident occurred in Louisiana or the insurance policy in question was written or delivered in the state. *Webb v. Zurich Insurance Company,* 251 La. 558, 205 So.2d 398 (1967). In *Continental Oil Company v. London Steamship Owners Mutual Insurance Association, Ltd.,* 417 F.2d 1030 (5th Cir. 1969), *cert. denied,* 397 U.S.

911, 90 S.Ct. 911, 25 L.Ed.2d 92 (1969), the Fifth Circuit held that an accident does not occur in Louisiana when it occurs on the outer continental shelf. Citing this jurisprudence, Steamship Mutual moved to be dismissed from the Original Complaint on the grounds that the collision in this case occurred on the outer continental shelf and that the policy issued for the S.S. ORIENT CORAL was written in London and not delivered in Louisiana. Shell did not object, and the Court granted the motion on August 25, 1982.

not a surety under the general rule embodied in Articles 1771 and 3035.

■ The conclusion that Steamship Mutual is not a surety can also be reached by an alternate route: by examining the letter of undertaking in light of the law governing construction of suretyship agreements.[3] Alluding to Articles 1957 and 1958 of the Civil Code, Shell argues that any ambiguities in the letter must be construed against the drafter, Steamship Mutual. This argument, however, ignores Code Article 3039. The language there is unequivocal: "Suretyship cannot be presumed; it ought to be expressed, and is restrained within the limits intended by the contract." The conflict between this Article and those Shell relies on was recently resolved in *Ball Marketing Enterprise v. Rainbow Tomato Company*, 340 So.2d 700 (La.App.3d Cir. 1976), where the court stated at 702:

> Even if we were to agree that the letter is ambiguous, we could not presume that it creates a contract of suretyship. Articles 1957 and 1958 embody rules of general application which would yield in the present case to the special rule of construction laid down in Article 3039. The controlling rule is that a contract of suretyship cannot be presumed.

Thus, to establish that Steamship Mutual is a surety for the S.S. ORIENT CORAL, Shell would have to show that Steamship Mutual expressly agreed in the letter to become such a surety; and this Shell cannot show.

Here following are the relevant portions of the letter:

> In consideration of your releasing, without the present furnishing of bond, the SS ORIENT CORAL, now under arrest in the Middle District of Louisiana . . . we are authorized by Steamship Mutual Underwriting Insurance Association (Bermuda) Limited, to agree, and on its behalf we do hereby agree, that, upon

demand by you . . . the proper claimant will promptly file release bond, with approved corporate surety, and file responsive pleadings to any complaint in either the Middle or Eastern District of Louisiana; it being the intent of this letter that the rights of the parties shall be and remain as though the vessel had in fact been released from arrest by the filing of such bond as of the date of this letter;
> . . . .

> Further, we are authorized by Steamship Mutual Underwriting Insurance Association. (Bermuda) Limited, to agree, and on its behalf we do hereby agree, that that Association guarantees the payment of any amount awarded herein by the United States District Court of the Middle or Eastern District of Louisiana, or by the Appellate Court, if appeal supervene.

> The corporate surety release bond hereinabove referred to shall in any amount to be agreed upon by the parties, or, in their inability to agree, to be fixed by the Court; but shall in no event exceed $3,000,000. Further, the guarantee set forth in the last preceding paragraph shall in no event exceed $3,000,000; provided, however, that if the surety bond hereinabove referred to is furnished, then all other obligations of the Association hereunder shall be terminated. . . .

■■ Shell argues that two clauses in the quoted excerpts convert the letter of undertaking into a suretyship agreement. The first is that the "Association guarantees the payment of any amount awarded." The second is "the guarantee set forth in the last preceding paragraph." If these clauses really did betray an intent to be bound as a guarantor, then by including them in the letter Steamship Mutual would indeed have expressly agreed to act as a surety. This follows from the well-estab-

---

**3.** The language in the letter of undertaking is especially significant here in light of Code Article 1901. That Article states that "Agreements legally entered into have the effect of law on those who have formed them." The Court is aware that in some cases the application of

Article 1901 might yield a different result from the application of Articles 1771 and 3035. Since the results in this case are the same, however, the Court need not decide how such conflicts should be resolved.

lished rule that "In Louisiana, a contract of guarantee is equivalent to a contract of suretyship." *Ball Marketing Enterprise v. Rainbow Tomato Company,* 340 So.2d at 701. Shell's argument is persuasive, however, only if the two clauses cited are read in isolation. Once those clauses are juxtaposed to other key clauses in the letter, the result is not what Shell suggests.

The most significant clause in the letter for purposes of this dispute is that which reads: "it being the intent of this letter that the rights of the parties shall be and shall remain as though the vessel had in fact been released from arrest by the filing of [a] bond as of the date of this letter." Unfortunately for Shell, the letter fails to specify whether Steamship Mutual would have served as surety if a bond had actually been posted. The letter merely states that "In consideration of your releasing, without the present furnishing of bond, the S.S. ORIENT CORAL ... [Steamship Mutual agrees] that, upon demand by you ... the proper claimant [presumably, Steamship Mutual] will promptly file release bond, with approved corporate surety...." This passage describes an obligation Steamship Mutual currently has, not one it would have had had a bond actually been posted. Moreover, even if the passage did describe the latter kind of obligation, the Court could not reasonably conclude that Steamship Mutual would have been (and thus is) a surety. For the passage in question, so construed, simply states that Steamship Mutual would have had to file a release bond with an approved corporate surety. It does not state that Steamship Mutual itself would have been that surety. Nor does the letter state that, if a bond had been filed, Steamship Mutual would have acted as a guarantor in conjunction with the approved corporate surety. Indeed, the letter states

just the opposite: "[I]f the surety bond hereinabove referred to is furnished, then all other obligations of the Association hereunder shall be terminated." These facts, together with the rule that suretyship cannot be presumed but must be expressed, compel the conclusion that Steamship Mutual is not a surety.

This conclusion is further supported by the fact that Shell failed to allege in its Original Complaint that Steamship Mutual is a surety. There Shell sought to have Steamship Mutual classified as an insurer subject to direct liability under LSA–R.S. 22:655.[4] The allegation of suretyship did not appear until the Supplemental and Amending Complaint. This suggests that the allegation was, very likely, an afterthought. For if Shell had actually considered Steamship Mutual a surety at the time the letter of undertaking was issued, Shell would doubtless have stated so at the outset of this litigation.

■■■ Since Shell has not shown that Steamship Mutual is a surety, Steamship Mutual is not subject to direct liability under Code Article 3051. Yet even if Shell could make the requisite showing, the result would be the same—Article 3051 would not apply. The scope of that Article is limited by Article 3039. The latter states that suretyship "is restrained within the limits intended by the contract." See also LSA–C.C. art. 1901. The significance of Article 3039 here is that the contract in question, the letter of undertaking, creates no direct liability on the part of Steamship Mutual. Instead, the letter expressly restricts Shell's right to proceed against Steamship Mutual. On this point, the letter is unambiguous.[5] It states that one of two events must occur before Shell has a cause of action against

---

4. See note 2, supra.

5. Once a court has decided, relying on the rule of construction embodied in Article 3039, that a particular contract is a suretyship agreement, the court must then decide what rule of construction to follow in interpreting the terms of that agreement. The choice is between the rule in Article 3039 and the rule in Articles 1957 and 1958. The former would require that all terms

be construed in a light most favorable to the surety; the latter, that the terms be construed against the drafter of the agreement. Since the Court in this case finds that the letter explicitly restricts Shell's right to proceed against Steamship Mutual, the Court need not resolve this dispute here. In other words, in this case both rules produce the same result.

Steamship Mutual. Either Shell must demand that a release bond be filed and Steamship Mutual ignore the demand, or Shell must obtain a judgment against the owners of the S.S. ORIENT CORAL or against the vessel itself. The occurrence of these events is a condition precedent framed in the disjunctive. Since neither event has yet occurred, Shell's suit against Steamship Mutual is premature.

In conclusion, Steamship Mutual would be directly liable to Shell if and only if Steamship Mutual were a surety *and* the letter of undertaking could be reasonably construed as affording Shell a right of direct action. For the reasons discussed above, neither of these conditions exist. Steamship Mutual is not a surety and the letter contains conditions precedent that have yet to occur. Thus, the Motion to Dismiss the Supplemental and Amending Complaint against Steamship Mutual is GRANTED.