STOKER, Judge.
The plaintiff, Cardinal Wholesale Supply, Inc. (Cardinal), filed suit against Kenneth Chaisson (Chaisson), Norbert Kreig (Kreig), and Curtis Delahoussaye (Dela-houssaye), to enforce certain personal guaranties signed by the defendants to secure the open account of CMD, Inc. (CMD). Chaisson filed a third party demand against Stephen J. Genuso, d/b/a Hub City Enterprises, d/b/a Hub Crest Carpets. The third party demand was dismissed by the parties. The trial court rendered judgment in favor of Cardinal and against Chaisson for the principal amount of $12,-347.18, but dismissed Cardinal’s suit against Kreig and Delahoussaye. It is from this judgment that Cardinal has ap *168 pealed. Cardinal assigns as error the trial court’s factual and legal determination that the guaranties of Kreig and Delahoussaye were unenforceable. No other parties have appealed the judgment; therefore, it is final as to all others. We affirm the judgment of the trial court.
FACTS
In August of 1972 Kreig and Delahous-saye submitted a credit application to Cardinal in order to obtain a line of credit for their floor covering, structural steel and building materials business. The application was made in the name of CMD and listed Kreig and Delahoussaye as the principal owners or stockholders. Kreig and Delahoussaye each signed an identical personal guaranty in the form of Kreig’s which appears, as completed, below.
[[Image here]]
*169 The guaranties were left at CMD by Gerald Samanie, a Cardinal salesman, to be signed by the defendants and returned to Cardinal.
Cardinal ran a credit check on CMD and thereafter made the determination that no open line of credit would be extended to CMD. The incomplete guaranties were put in Cardinal’s bank safe-deposit box where they remained until 1980. CMD and Cardinal continued to do business on a cash basis.
Kreig and Delahoussaye subsequently sold their interest in CMD to Chaisson on August 29,1974. Chaisson continued to do business with Cardinal on a cash basis until 1976. On March 5, 1976 Chaisson submitted a credit application to Cardinal for CMD which listed only himself as principal owner or stockholder. At some point in 1976 Cardinal approved an open line of credit for CMD. However, it was not until February 23, 1979 that Cardinal obtained a continuing guaranty from Chaisson. Unaware that Gerald Samanie had obtained one on that date, the credit manager, Gabe Garrido, obtained another on March 5, 1979.
CMD continued to do business with Cardinal until 1980 at which time it could not meet its obligations for credit purchases made during that year and CMD became delinquent and in default on the open account. The account remained unpaid despite Cardinal’s repeated demands. When Cardinal made the decision to turn the account over to an attorney for collection, the safe-deposit box was searched for any guaranties. The Kreig and Delahoussaye guaranties were discovered and then completed with the credit manager signing as a witness. The guaranties were given to the collecting attorney and a demand for payment of the account was made upon Kreig and Delahoussaye in 1981. This suit was thereafter filed in 1982.
ENFORCEABILITY OF THE PERSONAL GUARANTIES
The trial judge in his reasons for dismissing the suit against Kreig and Delahous-saye found that the guaranties were given to secure an extension of credit by Cardinal, but no credit was extended at the time the guaranties were given. He found that this constituted non-acceptance of the guaranties which vitiated the instruments. It was the trial judge’s opinion that Cardinal never relied on the two guaranties in extending credit to CMD in 1976. Cardinal argues that the language of the instruments negates the requirement that Cardinal do anything to accept them, and they are therefore absolute and continuing since they were never revoked. We disagree with Cardinal’s contentions.
LSA-C.C. art. 1831 provides that:
“A party who demands performance of an obligation must prove the existence of the obligation.
“A party who asserts that an obligation is null, or that it has been modified or extinguished, must prove the facts or acts giving rise to the nullity, modification, or extinction.”
The plaintiff must have proven that the documents sued upon bound the guarantors to pay the indebtedness of CMD. The trial court found that the instruments were signed by the guarantors, but were blank in the spaces provided for insertion of the date and name of the parties involved which were above their signatures. These instruments were then sent to Cardinal. Cardinal, having already decided not to extend credit to CMD, placed them in their bank safe-deposit box. In 1980 the safe-deposit box was searched, the guaranties discovered, and completed. Cardinal seeks to bind the parties on the basis of these instruments, asserting their validity because there was no revocation. However, Cardinal failed to prove that the contract of guaranty was ever completed.
The language of the instruments is to the effect that acceptance and notice of acceptance by the creditor are unnecessary and thereby expressly waived. Such a waiver, however, does not eliminate the necessity for an acceptance. There can be no contract without an offer and acceptance. LSA-C.C. art. 1927. See Lachman v. Block, 17 So. 153 (La.1894) and Travel *170 ers Indemnity Company v. Ducote, 380 So.2d 10 (La.1979).
In analyzing these instruments and the circumstances giving rise to them, we have used the doctrine laid down in the case of Menard v. Scudder, 7 La.Ann. 385, 387 (New Orleans 1852) concerning contracts of guaranty. The court said:
“[A] safe rule of construction of a guaranty is to give the instrument that effect which shall best accord with the intentions of the parties, as manifested by the terms of the guaranty, taken in connection with the subject matter to which it relates, neither enlarging the words beyond their import in favor of the creditor, nor restricting them in the aid of the surety.”
The court further stated that:
“[I]n the case of a prospective and continuing guaranty, the creditor must not only show that he advanced his money, or parted with his goods, on the faith of the letter of guaranty, but that he also seasonably notified the guarantor that he accepted his guaranty, and intended to act upon its security.” 7 La.Ann. at 388.
It is not enough for the creditor to simply present a claim for a sum due and owing and a document which purports to bind an individual for the debt of the third person. The creditor must prove that the guarantor bound himself for that debt.
The contract of guaranty is by its nature an accessory contract depending on the existence of a principal obligation. LSA-C.C. art. 1913. At least two conditions must generally be satisfied before a suretyship agreement exists, first, the principal debtor must be bound in contract to the creditor and, second, the contract in question must be valid. Shell Oil Company v. S.S. Orient Coral, 548 F.Supp. 1385 (E.D.La.1982).
Cardinal relies primarily for support of its argument on the case of Bonura v. Christiana Bros. Poultry Co. of Gretna, 336 So.2d 881 (La.App. 4th Cir.), writs refused, 339 So.2d 11, 339 So.2d 26, application not considered, 339 So.2d 26 (La.1976). The facts of that case which served to bind the personal guarantor on a guaranty signed 12 years earlier are quite distinguishable. Joseph Christiana asserted that a 12-year delay in enforcing the guarantee was unreasonable. The court, in that case, found nothing to support or justify a plea of laches or estoppel for the following reasons:
“[T]he facts show that the intent of the parties was to provide a security device to Bonura to induce that company to sell chickens for an indeterminate period on credit to the Christiana companies; that the sales began immediately causing the continuing guaranty to become effective; that the sales continued within the knowledge of Joseph Christiana, keeping the continuing guarantee in effect.” 336 So.2d at 885.
None of these circumstances or anything similar are present in this case. The court in Bonura recognized that there were continuous sales to Christiana from the time the guaranty was executed until the time that the delinquency in the account presented a problem necessitating enforcement of the guaranty. In the present case credit was not extended until 1976, two years after the alleged guarantors divested themselves of their interest in the corporation. They cannot be charged with knowledge of the corporation’s financial affairs and transactions. See Hibernia Bank & Trust Co. v. Succession of Cancienne, 140 La. 969, 74 So. 267 (1917).
We agree with the finding of the trial court that there was never an acceptance of the guaranties which would have completed the contract between the parties. Although the guarantors waived notice of the creditor’s acceptance, it is obvious that the waiver was made with the expectation that an extension of credit would then, or very soon, be made to the principal debtor. However, no contract of credit arose between CMD and Cardinal at that time. Completion of the contract of guaranty, that is acceptance, would have resulted from action by Cardinal in extending an open line of credit to CMD on the faith of the two personal guaranties. Acceptance in some form was essential, and could have been found or implied from any subsequent *171 actions of the parties that clearly indicated acceptance and reliance on the guaranties. Apparently the worth of the Kreig and Delahoussaye guaranties was insufficient to warrant an extension of credit to CMD in 1972. The purpose of the personal guaranties was to induce Cardinal to extend credit to CMD in 1972. Such credit was not extended.
The fact that the documents were put away in a safe-deposit box in an incomplete state (any authority which Cardinal may have had at the time to complete the documents was apparently not exercised), evidences to this court that Cardinal did not accept them for the purpose for which they were intended. Absent a principal obligation created by the contemporaneous extension of credit by Cardinal to CMD, no accessory obligation arose.
It was not error for the trial court to find that the creditor extended credit in 1976 without relying on the guaranties of Kreig and Delahoussaye. Their effectiveness could not be resurrected in 1980 by filling the blank spaces and making demand on the parties. We agree that Cardinal was unaware of the existence of the guaranties from 1976 to 1980, during which time CMD conducted business with Cardinal on credit.
We find that it is unreasonable to believe, in the context of these facts and circumstances, that the documents presented evidence the requisite intent of Kreig and Delahoussaye to be bound for the debts of CMD, in perpetuity, and dependent upon Cardinal extending credit at some indeterminate time in the future.
Accordingly, the judgment of the trial court is hereby affirmed. Costs of this appeal are assessed to the plaintiff-appellant.
AFFIRMED.