BARRY, Judge.
Terra Resources Inc. sued Federated Energy Corporation [FEC] because it failed to pay its guaranteed share of costs for drilling and completing two oil and gas wells in Terrebonne Parish. The trial court sustained FEC’s exception of prematurity and Terra appeals.
Pursuant to a Joint Venture Operating Agreement dated June 26, 1981 FEC was required to drill two oil wells. Terra was to operate the prospect and American Fluorite, Inc. and Peninsula Resources, Inc. signed as non-operators.
According to Terra’s brief American and Peninsula indicated they would not pay their allocated drilling costs. Before drilling started, FEC and Terra negotiated two letter agreements dated February 17, 1982 and February 19, 1982. Paragraph 1 of both agreements stated that if American (.03125% working interest owner) or Peninsula (.12500% working interest owner) did not pay their expenses as incurred by Terra, then FEC “shall stand liable” for the balance. Paragraph 2 of both agreements was identical; one related to American and the other to Peninsula:
Terra hereby agrees that it shall use its best efforts to collect all monies due from [Peninsula Resources/American Fluorite, Inc.]. However, all invoices which may become delinquent for a period more than 60 days from the invoice date thereof, shall become the responsibility of FEC to pay and Terra will invoice FEC for [Peninsula Resources’/American Fluorite’s] share. The terms of Terra’s invoice to FEC for [Peninsula Resources’/American Fluorite’s] delinquent share shall be payable upon receipt.
The agreement relating to Peninsula contained a third paragraph which provided that Terra would not invoice FEC for 30 days from the date of notice, contrary to paragraph 2’s “payable upon receipt.”
On February 26, 1982 FEC added the following conditions at the bottom of each letter agreement:
This agreement is agreed to and accepted specifically upon the condition that Terra under no circumstances shall disclose any of the contents, meaning or intent of this agreement to Peninsula or anyone else other than Terra’s own legal counsel, and further that Terra, will use all legal means at its disposal to collect all monies due from [Peninsula/American Fluorite, Inc.] so that FEC’s liability under this agreement will be minimized.
*129 The president of FEC and the exploration manager of Terra signed below the added conditions.
According to an affidavit of E. Edwin Schaefer, supervisor at Terra, when American and Peninsula did not pay within 60 days Terra invoiced FEC five times after April, 1982 and FEC paid a total of $499,-199.98 on behalf of American and Peninsula. Thereafter, FEC refused to pay. Terra sued FEC who filed exceptions of prematurity, vagueness and nonjoinder of necessary parties. The trial court held that the agreements were unambiguous and allowed no evidence on their execution. The court evidently concluded that the added condition which requires Terra to exhaust “all legal means” to collect from American and Peninsula means FEC’s guarantees are to be held in abeyance until litigation is final. FEC’s exception of prematurity was maintained and the suit dismissed without prejudice.
Terra claims prematurity does not apply: 1) since the contracts did not oblige Terra to sue American and Peninsula before proceeding against FEC; 2) since FEC waived the added condition because it paid several delinquent invoices owed by American and Peninsula; 3) FEC’s dilatory exception was not suitable for disposition in limine litis. Terra also contends it was error not to admit evidence concerning execution of the contracts.
FEC argues the letter agreements are unambiguous as to their intent to minimize its liability with the conditional acceptance. FEC submits the added language should not be construed against it as the drafter and no parole evidence can be used beyond the written contract. FEC also contends the “typed” addendum supercedes printed paragraph 2.
Both sides concede the letter agreements are contracts of suretyship which are subject to the same rules of interpretation as contracts in general. Ferrell v. South Central Bell Telephone Company, 403 So.2d 698 (La.1981). A suretyship contract must be in writing and must contain absolute, explicit expression of intent to be bound, Boyle v. Fringe Facts, Inc., 414 So.2d 1333 (La.App. 2d Cir.1982); such a contract cannot be presumed and should be confined within the limits of the language which creates the obligation. La.C.C. Art. 3039; Succession of Moody, 245 La. 429, 158 So.2d 601 (1963). One may be a surety without the knowledge of the person for whom he becomes surety. La.C.C. Art. 3038.
Courts are bound to give legal effect to all contracts according to the true intent of the parties to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. La.C.C. Art. 1945; Rebstock v. Birthright Oil and Gas Company, 406 So.2d 636 (La.App. 1st Cir.1981) writ denied, 407 So.2d 742 (La.1981). All clauses of agreements are interpreted one by the other to give to each the sense that results from the entire act. La.C.C. Art. 1955; Pendleton v. Shell Oil Company, 408 So.2d 1341 (La.1982).
The aim of the interpretation is to discern a compatible meaning to all provisions of an agreement. Farrell v. Hodges Stock Yards Inc., 343 So.2d 1364 (La.1977). The court will avoid neutralizing any provision; if possible, practical effect will be given to all its parts according to each the sense that results from the entire agreement. Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982). The rule that an ambiguous provision is read against the party who drafted it, La.C.C. Art. 1958, St. Romain v. Midas Exploration, Inc., 430 So.2d 1354 (La.App. 3rd Cir.1983), must yield when such an interpretation would presume a suretyship contract. La.C.C. Art. 3039; Ball Marketing Enterprise v. Rainbow Tomato Company, 340 So.2d 700 (La.App. 3rd Cir.1976). See also Shell Oil Company v. S.S. Orient Coral, 548 F.Supp. 1385 (E.D.La.1982).
La.C.C. Art. 1950 directs us to ascertain the common intent of the parties when there is anything doubtful in the agreement. Henry v. Ballard & Cordell Corporation, 418 So.2d 1334 (La.1982). In *130 ascertaining the intention, when it cannot be discerned from the contract as a whole, the court may inquire into the circumstances surrounding the parties at the time of contracting. Henry, supra; Cooley v. Meridian Lumber Company, 195 La. 631, 197 So. 255 (1940).
Paragraph 2 clearly states that invoices of American and Peninsula delinquent more than 60 days are FEC’s responsibility payable upon receipt of the invoice. However, that provision is in conflict with the addendum. A modification (condition or limitation) in the acceptance of what constituted the offer is considered a new offer. La.C.C. Art. 1806; Rodrigue v. Gebhardt, 416 So.2d 160 (La.App. 4th Cir.1982).
The issue, then, is the meaning of the addendum. Most importantly, the addendum does not state that FEC has no obligation to pay pending Terra’s “all legal means.” In fact, FEC made five payments as surety. Obviously, FEC wants to keep its liability to a minimum, for which Terra agreed to be the collector. Further confusion is created by FEC’s condition of nondisclosure to American and Peninsula. Because of the addendum’s ambivalence, the trial court should inquire into the circumstances which show the parties’ intentions.
FEC’s argument that the typed addendum would supercede printed paragraph 2 is without merit: all provisions are typed.
Therefore, the judgment maintaining the exception of prematurity is reversed and the matter remanded for further proceedings.
REVERSED: REMANDED.
LOBRANO, J., concurs in part and dissents in part.