536 So.2d 434 (1988)
Michelle Brignon Tinsley, Wife of Richard S. SHARPE
v.
Richard S. SHARPE.
No. 88-CA-0220.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1988.
Rehearing Denied January 18, 1989.
Writ Denied March 27, 1989.
*435 Robert C. Lowe, Terrence L. Hauver, Lowe, Stein, Hoffman & Allweiss, New Orleans, for appellant.
Sidney L. Shushan, Guste, Barnett & Shushan, New Orleans, for appellee.
Before BARRY, CIACCIO and ARMSTRONG, JJ.
CIACCIO, Judge.
Following this couple's legal separation, Richard Sharpe filed suit against Michelle Sharpe for an accounting, writ of sequestration and return of his separate property. The trial court granted, but later dissolved, the writ of sequestration. Thereafter, the court sustained the plaintiff's exception of no right or cause of action lodged in response to the defendant's suit for accounting. The court also awarded the defendant $1,735 resulting from the plaintiff's damage of the defendant's separate property.
Richard Sharpe appeals from that portion of the district court judgment which sustained Michelle Sharpe's peremptory exception, and we affirm.
The record reveals the following:
Michelle Tinsley and Richard Sharpe were married on November 29, 1980. The couple lived together for some time before their marriage. During this time and afterwards the couple resided at a residence owned by Mrs. Sharpe which was located at *436 6044 Camp Street in New Orleans. Prior to their marriage, on November 17, 1980, the couple entered into a premarital contract. It is this contract which is the subject of the current dispute.
During the marriage Richard Sharpe was employed as a salesman and he would frequently earn sizeable commission checks. Michelle Sharpe did not work but had considerable savings, due, at least in part, from the death of her prior husband. During the existence of the marriage large sums of money were expended for living expenses, as well as for the improvement of the Camp Street property. According to Mr. Sharpe the couple had agreed that Mrs. Sharpe would pay the house note on the Camp Street property and he would be responsible for the couple's living expenses. The couple maintained a joint checking account, as well as their own individual accounts. Certain sizeable sums of money which came from Mr. Sharpe were placed into the couple's joint account. Various other sums of money placed in Mrs. Sharpe's separate accounts came from Mr. Sharpe.
Mr. Sharpe, at trial and on appeal, maintains that he made no gifts to his former wife. Rather, he contends that all the monies which ended up in Mrs. Sharpe's accounts were loans. According to him, the couple had an agreement whereby he would lend his former wife monies upon which she could earn interest and which, upon request, she would be obliged to return the total principal amount to him. He also claims interest accruing since their separation. He offers no promissory notes or other documentary evidence to prove the acknowledgement of the indebtedness.
Mrs. Sharpe refutes this characterization of the monies she received from Mr. Sharpe. She maintains that the monies were repayments to her of advances she made for living expenses which her former husband was obligated to make, but for which he didn't have sufficient funds.
The couple was legally separated on January 31, 1985 on the basis of the plaintiff's fault because of constructive abandonment and cruel treatment. The defendant was found free of fault. Thereafter, the defendant sought return of the funds he had allegedly "loaned" his former wife. The funds were not returned and this suit followed.
At the heart of this dispute is the premarital contract by authentic act, attached hereto as Appendix A, entered into by the couple and which provides in pertinent part:
1. The said intended husband and wife shall be separate in property. Accordingly, they hereby formally renounce all provisions of the Revised Civil Code and of the Revised Statutes of Louisiana which establish and regulate a community of acquets and gains between husband and wife.
2. All property and effects of the said husband and wife, whether owned by him or by her at the time of the celebration of the said intended marriage or acquired during said marriage in whatever manner or fashion, are hereby declared to be separate property and that of the wife separate and paraphernal property and they, and each of them, do expressly reserve to themselves individually the entire administration of their respective partrimony being the intention of the parties, the said intended husband and wife, that neither shall have any economic claim upon the other nor shall any property even if acquired by them in both names at any time be or be considered to be community property or be regulated or controlled by the laws pertaining to a community of acquets and gains.
The trial court found that this contract precluded all claims as between the parties except those which constituted post separation or divorce tort claims. For this reason the court awarded Mr. Sharpe $1,735 resulting from his wife's tortious damage of his property, occurring after the dissolution of their marriage.
On appeal, Richard Sharpe argues that the trial court erred in interpreting the premarital contract so as to preclude his recovery of sums allegedly loaned and for damages, attorney fees and costs for plaintiff's *437 failure to comply with discovery. We disagree.
When the words of a contract are clear and explicit and lead to no absurd consequences no further interpretation may be made in search of the parties' intent. La.C.C. Art. 2046. In determining the meaning of certain words in a contract, they must be given their general prevailing meaning and words susceptible of different meanings must be interpreted as having that meaning that renders it effective and in conformity with the object of the contract. La.C.C. Arts. 2047-2049.
Michael Bagot, the author and notary of the premarital contract testified at the trial concerning the intent of the contracting parties. He stated that the parties discussed their intent that neither would have a claim against the other for money or physical property. They also agreed that there would be no debts owed from one to the other. Bagot further testified that the parties intended to do away with a community property system in favor of a separate property regime. According to Bagot the term "economic claims" meant that neither party was to have a claim for money or anything furnished during the marriage.
However the trial court judge found that the term "economic claims" was not ambiguous and for this reason he rejected the testimony of the attorney who authored the contract. See: La.C.C. Art. 1848. The court concluded that the clear terms of the contract barred "all claims relating to all reimbursements, even those predating the marriage or the date the contract was signed. All claims relating to the termination of the marriage are likewise barred. Only post separation or divorce tort claims may be enforced." We find no error in this regard. Moreover, since we also agree with the reasoning of the district court, we adopt it as our own and quote in extenso from that opinion:
This Court concludes that the phrase barring economic claims between the parties was an attempt to prohibit either party from claiming (in the event of separation or divorce) alimony, child support, attorney's fees, court costs, the marital one-fourth, dowry reimbursements, return or reimbursement of things given or loaned, and the ordinary or reasonable expenses incurred by either party for day-to-day living while married and living together. The agreement was intended to prohibit either party from claiming reimbursement of loans of money and similar transactions. The Court finds that the purposes of the marital contract at issue in the present case were, inter alia, (1) to make the parties separate in property such that if the property was acquired by one party in his or her separate name, such property was to be the separate property of the person in whose name it was acquired; (2) to make the income of each party separate from that of the other; and (3) to renounce the community property regime and the presumptions respecting the ownership of acquisitions during the marriage. The Court views the matter as a legal question more than a factual question.
* * * * * *
The Court finds that the phrase was intended to cover every claim between the parties of a financial nature. Moreover, as a matter of law, the contract cannot be interpreted to prohibit claims for alimony, child support, ordinary living expenses, or the marital one-fourth since our law declares such renunciations as against public policy.
At first, the phrase "economic claim" appears ambiguous. But in actuality, it is not ambiguous, and this Court feels compelled to give the phrase meaning. In the context of this case, the Court finds that Mr. Sharp is not entitled to reimbursement of loans of money and other transfers of his separate property (money) made to Ms. Tinsley during the marriage (including transfers revoked pursuant to C.C. Art. 156) to be offset against those portions of moneys used by Ms. Tinsley for the ordinary, necessary or reasonable living expenses of the parties. In addition, to the extent that Ms. Tinsley's separate immovable property was improved (in the nature of a capital improvement as distinguished from a repair) *438 by Mr. Sharp's money (or its equivalents), Ms. Tinsley owes no reimbursement to Mr. Sharp. The claim is barred by the premarital contract.
Yet some reimbursement is owed by Ms. Tinsley to Mr. Sharp for moneys owed not relating to the marriage per se, such as the intentional damage to Mr. Sharp's separate property.
* * * * * *
A review of the record in this case discloses that Ms. Tinsley's actions relating to failure to comply with discovery has caused Mr. Sharp to expend considerable effort, time and money to bring this matter to trial. The Court cannot, however, tax attorneys' fees because the premarital contract precludes the payment of same, at least under this Court's interpretation of the contract.
Matrimonial agreements are authorized by Louisiana Civil Code Article 2328. Such agreements executed prior to the marriage may be amended during the marriage by an agreement reduced to writing, in authentic form or as a duly acknowledged act under private signature. La.C.C. Art. 2331. The burden of proof was on the husband to show that an amendment or waiver of the premarital agreement had occurred. In the absence of proof of an amendment or waiver (i.e., such as the execution of a promissory note or other written acknowledgement of indebtedness) the clear language of the contract controls. The defendant failed to prove any amendment of the marital agreement or any acknowledgement of the indebtedness or any agreement to treat advances as loans to be repaid by Mrs. Sharpe.
For the foregoing reasons the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.
BARRY, J., dissents with reasons.
 APPENDIX A
 
UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF ORLEANS
 BE IT KNOWN, That on this 17th day of November, in the year
One Thousand Nine Hundred and Eighty;
 BEFORE ME, Michael H. Bagot, a Notary Public duly commissioned
and qualified in and for the Parish of Orleans, State of Louisiana,
and in the presence of the undersigned competent witnesses;
 PERSONALLY CAME AND APPEARED:
 MICHELLE BRIGNON, widow
 of TIMOTHY O. TINSLEY,
 of the Parish of Orleans,
 State of Louisiana
 and
 RICHARD S. SHARPE,
 of the Parish of Orleans,
 State of Louisiana,
both of the full age of majority, who severally declared that they
do plan and intend to be joined in the bonds of matrimony on or
*439
about November 29, 1980 at Bay St. Louis, Mississippi, and in
order to fix certain rights between them, they do contract as
follows, to-wit:
 1. The said intended husband and wife shall be separate
in property. Accordingly, they hereby formally renounce all
provisions of the Revised Civil Code and of the Revised Statutes
of Louisiana which establish and regulate a community of acquets
and gains between husband and wife.
 2. All property and effects of the said husband and wife,
whether owned by him or by her at the time of the celebration
of the said intended marriage, or acquired during said marriage
in whatever manner or fashion, are hereby declared to be separate
property and that of the wife, separate and paraphernal property
and they, and each of them, do expressly reserve to themselves
individually the entire administration of their respective particular
movable and immovable, corporeal and incorporeal property
and the respective free enjoyment of each of their revenues. It
being the intention of the parties, the said intended husband
and wife, that neither shall have any economic claim upon the
other nor shall any property even if acquired by them in both
names at any time be or be considered to be community property
or be regulated or controlled by the laws pertaining to a
community of acquets and gains.
 THUS DONE AND PASSED in my notarial office on the day,
month and year first above written, in the presence of the
undersigned competent witnesses who sign their names together
with the said Appearers and me, Notary, after due reading of
the whole.
WITNESSES:
*440
BARRY, Judge, dissents with reasons.
I agree with the trial judge's original impression, i.e., that the questioned provision of the premarital contract is ambiguous.
The statement that "neither shall have any economic claim upon the other" is, at the very least, subject to different interpretations.
It was error to reject the testimony of the Notary Public. Considering the ambiguity, parol evidence is the only solution to determine the intent of the parties. La.C. C. Art. 2053 (pre-1984 Art. 1950); Terra Resources v. Federated Energy Commission, 465 So.2d 127 (La.App. 4th Cir.1985), writ denied 468 So.2d 1212 (La.1985).

ON APPLICATION FOR REHEARING
PER CURIAM.
In his application for rehearing, defendant urges that our opinion erred by:
1) Declaring that a matrimonial agreement may be amended by authentic act or other written instrument.
2) Finding that Mr. Sharpe's claim for reimbursement failed for lack of proof.
3) Failing to recognize the capacity of the parties to contract for the repayment of loans or advances.
We agree that a matrimonial agreement may be modified during marriage only upon joint petition and a finding by the court that the modification serves the best interest of the parties and that they understand the governing principles and rules, C.C. Art. 2329, and, to the extent our earlier opinion held to the contrary, it is reversed.
There was no modification of this matrimonial agreement prior the judgment of separation. Accordingly, we find, as did the trial court that the language of the matrimonial agreement barred any claims for reimbursement of loans of money or other transfers of Mr. Tinsley's separate property during the marriage.
Because the language of the agreement is controlling we have no need to address the other assignments of error.
Accordingly, the rehearing application is denied.
REHEARING REFUSED.

*441 ON APPLICATION FOR REHEARING
BARRY, Judge, would grant a rehearing.