949 So.2d 535 (2007)
Scott G. VINCENT
v.
Janet P. VINCENT.
Scott G. Vincent
v.
Janet P. Vincent.
Nos. 2005-CA-1175, 2006-CA-1312.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 2007.
Rehearing Denied February 22, 2007.
Opinion Concurring in Denial of Rehearing February 22, 2007.
Nancy K. Durant, Metairie, LA, for Plaintiff/Appellant.
Rita K. Akehurst, II, Lauren E. Brisbi, Jamison P. Bagwell, Rita Akehurst & Associates, Harvey, LA, for Defendant/Appellee.
Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge MAX N. TOBIAS, JR., Judge EDWIN A. LOMBARD, and Judge LEON A. CANNIZZARO, JR.
PER CURIAM.
This Court considered the appeal of Scott G. Vincent and pursuant to Article V, Section 8 of the Louisiana Constitution of 1974, the matter was re-argued before a five-judge panel of this Court. Subsequently, Mr. Vincent filed an application for a supervisory writ, numbered 2006-C-1312, which was ordered consolidated with this appeal.
*536 The five-judge panel of this Court issues the following decree:
IT IS ORDERED, ADJUDGED AND DECREED that a majority of the court finds that the district court did not err in awarding interim spousal support in the amount of $10,044.29 per month. Therefore, the award of interim spousal support is affirmed;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a majority of the court finds that the district court did not err in awarding permanent alimony. One judge would affirm the award of the district court; however, the other two judges would amend and affirm as amended the award of permanent alimony by reducing the permanent alimony to Three Thousand ($3,000.00) dollars per month. Further, a majority of the panel would limit the award of permanent alimony to a period of five (5) years. Therefore, pursuant to Butler v. Zapata Haynie Corp., 94-1171 (La.7/5/94), 639 So.2d 1186, the award of permanent alimony is Three Thousand ($3,000.00) dollars per month for five years.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a majority of the court finds that the district court erred in assessing to Mr. Vincent the costs of all attorney's fees in this matter. Therefore, that portion of the judgment assessing all attorney's fees to Mr. Vincent is reversed;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a majority of the court finds that the district court did not err in assessing all court costs to Mr. Vincent. Accordingly, the assessment of all court costs to Mr. Vincent is affirmed;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in all other respects the judgment of the district court is affirmed;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Relator's writ application numbered 2006-C-1312, is rendered moot by this decree.[1]
AMENDED AND AFFIRMED AS AMENDED IN PART; AFFIRMED IN PART; REVERSED IN PART; WRIT APPLICATION  MOOT.
ARMSTRONG, C.J., and JONES, TOBIAS and CANNIZZARO, JJ., concur in part and dissent in part.
LOMBARD, J., concurs in part and dissents in part for the reasons assigned by JONES, J.
ARMSTRONG, C.J., concurring in part and dissenting in Part.
I join in the per curiam insofar as it affirms the trial court's award of permanent alimony to Mrs. Vincent. However, having reviewed the record in its entirety, I am persuaded that the trial court did not abuse its discretion and correctly awarded Mrs. Vincent interim spousal support in the amount of $10,044.29 per month, terminating upon the date of divorce, and final support in the amount of $7,275.20 per month for five years from the date of divorce, together with all attorney's fees and costs. Therefore, I would affirm the judgment of the trial court.
JONES, J., concurring in part and dissenting in part.
I respectfully concur in part and dissent in part in the majority's opinion for the following reasons.
*537 The Appellant, Scott Vincent (hereinafter "Mr. Vincent"), seeks review of a district court judgment awarding the Appellee, Janet Vincent (hereinafter "Ms. Vincent"), interim support in the amount of $10,044.29 per month, terminating upon date of divorce; final support in the amount of $7,275.20 per month for five years from the date of divorce, and all attorney's fees and costs.

Statement of Facts and Procedural History:
Mr. and Ms. Vincent were married on May 26, 1990, and have no children. The parties executed a separation of property regime agreement (hereinafter "the agreement") on the date of their marriage, placing the parties under a separate property regime. The parties subsequently filed a joint petition for court approval of the agreement. The district court rendered judgment on May 6, 1991, validating the agreement between the parties and toward third persons as of May 26, 1990.
Mr. Vincent later filed for divorce on May 19, 2004, which was subsequently granted on December 21, 2004. Following the divorce, a Special Master was appointed by court order to assist in partitioning the community property. In accordance with La. R.S. 13:4165, the Special Master filed a proces verbal finding the separation of property agreement valid. No objections to the Special Master's findings were filed. On March 10, 2005, the district court decreed that the agreement and judgment validating the agreement were enforceable and had not been renounced.
On September 29, 2004, the district court entered an "Interim Order" based upon a consent agreement between the parties. The order directed Mr. Vincent to pay $3,000 per month to Ms. Vincent in interim support, and $2,000 per month to Ms. Vincent's health care provider for her physical therapy.[1] Interim support was increased to $18,986.56 per month on December 15, 2004, via another order issued by a different trial judge.[2] The order that increased the award was issued without a contradictory hearing. This order was based upon a document provided by Ms. Vincent declaring Mr. Vincent's monthly income to be $39,973.11.[3] The order further acknowledged that Mr. Vincent made payments of $21,000 in support and $10,000 in medical bills for Ms. Vincent's physical therapy in accordance with the September 2004 order.
As a result of the "Interim Order," Mr. Vincent filed a Motion for New Trial, which was granted by the district court on March 7, 2005. Following the three-day trial, the district court rendered a judgment on April 18, 2005. The district court found Ms. Vincent free from legal fault in the dissolution of the marriage. Additionally, the district court found Mr. Vincent in contempt for failing to pay support, to disclose his income, and to produce financial information. The district court, however, explicitly chose not to impose penalties on Mr. Vincent.
Relying upon Ms. Vincent's income and expense list, the district court awarded her interim support in the amount of $10,044.29 per month, retroactive to the date of filing, terminating upon rendition *538 of the divorce judgment. The district court additionally awarded Ms. Vincent final support in the amount of $7,275.20 per month for five years from the date of divorce. Finally, the district court awarded Ms. Vincent all attorney's fees and costs.
Mr. Vincent timely filed the present appeal alleging that the amounts awarded by the district court's judgment in interim support, final support, and attorney's fees and costs are extremely high, and not supported by facts or law. He further claims that the awards will significantly deplete his assets and income, thus causing irreparable injury.
This Court considered the appeal of Scott G. Vincent and pursuant to Article V, Section 8 of the Louisiana Constitution of 1974, the matter was re-argued before a five-judge panel of this Court. Subsequently, Mr. Vincent filed an application for a supervisory writ, numbered 2006-C-1312, which was ordered consolidated with this appeal.

Law and Discussion:
Separation of Property Regime Agreement
Mr. Vincent alleges that the district court failed to consider the valid separation of property regime agreement between the parties, thus erroneously awarding final support to Ms. Vincent. Property acquired during marriage is community property. La. C.C. art. 2340. However, in Clay v. United States, the United States Court of Appeals for the Fifth Circuit held that the Louisiana Civil Code articles defining separate and community property are mandatory only in the absence of a prenuptial agreement. Clay v. U.S., 161 F.2d 607, 610 (5 Cir.1947).
The record reveals that the parties entered into an agreement on May 26, 1990, thereby placing them under a separate property regime. The agreement provides in pertinent part:
IV.
Each party owns substantial paraphernal property, including but not limited to, cash, real estate, mineral interests, bonuses, delay rentals, royalties, overriding royalty interests, and shut-in payments arising from mineral leases. Any natural or civil fruits, revenues or products of any paraphernal property shall fall into the separate estate of the owner of that separate asset. The owner party shall use and administer such property separately and alone. The non-owner party shall have no claim to or interest in the other party's separate assets or the fruits, revenues or products thereof.
VI.
This Agreement shall bind and inure to the benefit of the parties, and their respective estates, heirs, successors and assigns.
The parties subsequently filed a joint petition for court approval of the agreement. On May 6, 1991, the district court rendered judgment validating the agreement between the parties and toward third persons as of May 26, 1990. A Special Master, appointed pursuant to La. R.S. 13:4165, filed a proces verbal finding the agreement valid. The Special Master's report shall be adopted by the court as submitted, unless clearly erroneous. La. R.S. 13:4165(C)(3). No objections were filed, and on March 10, 2005, the district court accordingly decreed that the agreement and judgment validating the agreement were enforceable and had not been renounced.
Yet, in awarding final support to Ms. Vincent, the district court considered the *539 property as community. Since the agreement placed the parties under a separate property regime, the district court was precluded from considering the property as belonging to a community property regime. The agreement states that "the non-owner party shall have no claim to or interest in the other party's separate assets or the fruits, revenues or products thereof." Thus, the agreement prevents either party from claiming the other party's separate property, including claims for final support.
In McAlpine v. McAlpine, the Louisiana Supreme Court held that prenuptial agreements waiving permanent alimony are enforceable and not against public policy. McAlpine v. McAlpine, 94-1594 (La.9/5/96), 679 So.2d 85, 86. Therefore, I would find that the district court erroneously awarded final support to Ms. Vincent, and the judgment awarding final support should be vacated. Moreover, because I would find the issue of fault to be irrelevant given the fact that the prenuptial agreement is enforceable and valid, I pretermit any discussion of Mr. Vincent's claim that the district court erroneously found Ms. Vincent free from fault.
Furthermore, I cannot see how an award of permanent alimony in the amount of $7,275.20 is justified by this record. Again, the gross income of Mr. Vincent is $140,967.60. Thus, it is unconscionable to think that this award is "reasonable."
Basis for Awarding Support
Mr. Vincent claims that the district court incorrectly assessed the amount of interim and final support awarded to Ms. Vincent. During marriage, a spouse lacking sufficient income for maintenance is entitled to interim support regardless of whether the property regime is community or separate, and one cannot contract out of owing interim support. Yorsch v. Yorsch, 503 So.2d 616, 617 (La.App. 4 Cir. 1987). Interim support is based on the needs of the requesting party, the ability of the other party to pay, and the parties' standard of living during the marriage. La. C.C. art. 113.
Mr. Vincent argues that the district court's assessment in the amount of interim and final support awarded to Ms. Vincent was incorrect and constitutes an abuse of discretion. I agree. Since I would vacate the award of final support for the reasons discussed above, I would only consider the district court's basis for awarding interim support in the amount of $10,044.29 per month. However, while I do not think Ms. Vincent is entitled to any permanent alimony and since there is division among those judges who would award permanent alimony, I would limit permanent alimony to a period of five (5) years.
With regard to the issue of interim support, Mr. Vincent has been paying $3,000 per month to Ms. Vincent in interim support, and $2,000 per month to Ms. Vincent's health care provider for her physical therapy pursuant to an order issued in September of 2004. These amounts were agreed to by both parties. A few months later, however, the "Interim Order" was increased to $18,986.56 per month. This amount was based on a document provided by Ms. Vincent declaring Mr. Vincent's monthly income to be $39,973.11.
After the new trial, the district court decreased the interim award to $10,044.29. The district court relied upon Ms. Vincent's income and expense list. Yet, the parties' joint tax returns submitted at trial revealed Mr. Vincent's approximate annual income of $140,967.60 from 1999 through 2003. Based upon that figure, Mr. Vincent's monthly income is calculated at $11,747.30. Therefore, there was insufficient evidence of any change of circumstances warranting the initial increase in interim support to $18,986.56. Thus, the *540 district court abused its discretion by not reinstating the original consent agreement. Since, I would reduce the interim support order to direct Mr. Vincent to pay $3,000 per month, I need not address his assertion that the district court erred by basing the award on Ms. Vincent's claims of inability to work.
Attorney's Fees and Costs
Mr. Vincent argues that the district court erroneously ordered that he pay all attorney's fees and costs. An award of attorney's fees is a penalty imposed to discourage a particular activity on the part of the opposing party. Langley v. Petro Star Corp. of La., 01-0198 (La.6/29/01), 792 So.2d 721, 723. The district court found Mr. Vincent in contempt for failing to pay support, to disclose his income, and to produce financial information. The district court, however, specifically chose not to impose penalties upon Mr. Vincent for his acts of contempt. Yet, the district court assessed all attorney's fees and costs to Mr. Vincent.
Since the district court did not award attorney's fees and costs for Mr. Vincent's acts of contempt, there is no basis for the award. Thus, I would find that the district court incorrectly ordered all attorney's fees and costs to be paid by Mr. Vincent, and would vacate the same.
For the foregoing reasons, I hereby concur in part and dissent in part with the per curiam opinion of this court.
TOBIAS, J., concurring in part, dissenting in part.
I respectfully concur in part and dissent in part in the majority's opinion for the following reasons.
An antenuptial agreement that precludes one spouse from obtaining from the other spouse interim spousal support[1] is against public policy. McAlpine v. McAlpine, 94-1594, p. 9 (La.9/5/96), 679 So.2d 85, 90. However, an antenuptial agreement that precludes one spouse from obtaining from the other spouse permanent alimony is enforceable if the antenuptial agreement specifically states that a spouse shall have no right to alimony. Id., pp. 1 and 16, 679 So.2d 86 and 93.
In the case at bar, the antenuptial agreement is silent as to the right of one spouse to obtain from the other either interim spousal support or permanent alimony. The issue of interim spousal support is, pre-divorce, related to the standard of living of the parties while married and, post-divorce, need (i.e., an amount for maintenance [food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance and income tax liability generated by alimony payments][2] as opposed to continuing an accustomed lifestyle, Bowes v. Bowes, 00-1062, p. 7 (La.App. 4 Cir. 8/15/01), 798 So.2d 996, 1001), provided the party seeking permanent alimony is free from fault in the break up of the marriage. La. C.C. art. 111. Additionally, permanent alimony, if warranted, may not exceed one-third of the obligor spouse's net income. La. C.C. art. 112 B.
A trial court's rulings on alimony issues are entitled to great weight. Williams v. Williams, 97-2245, p. 2 (La.App. 4 Cir. 4/11/01), 803 So.2d 50, 51. Accordingly, a trial court is vested with much discretion in making alimony determinations. Id., citing Hester v. Hester, 98-2220, p. 7 (La. App. 4 Cir. 1/19/00), 752 So.2d 269, 270. Further, a trial court's determinations concerning *541 the amount of alimony awarded should not be reversed or modified by an appellate court absent a clear abuse of discretion. Id.
In this case, based upon the evidence of record, I cannot say that the trial court was manifestly erroneous or clearly wrong in awarding interim spousal support of $10,044.29 per month. The interim spousal support of $5,000.00 per month ($3,000.00 interim spousal support plus $2,000.00 for physical therapy) agreed to by the parties' consent was, by stipulation, set without prejudice to the rights of the parties. Therefore, the trial court did not err in setting interim spousal support at a different amount without giving or affording deference or weight to the parties' temporary consent agreement. In setting interim spousal support, the trial court was not obligated to use any particular period of income as a basis. The test is need and the ability of the obligor spouse to pay.
To award permanent alimony to a spouse, as noted above, that spouse must be free from fault in the break up of the marriage. The 18 April 2005 judgment finds Ms. Vincent free from fault. The finding of fault is not manifestly erroneous or clearly wrong. Therefore, the trial court could consider whether permanent alimony was warranted.
For purposes of permanent alimony, the trial court was required to consider all relevant factors and at a minimum the following factors set forth in La. C.C. art. 112 A:
(1) The needs of the parties.
(2) The income and means of the parties, including the liquidity of such means.
(3) The financial obligations of the parties.
(4) The earning capacity of the parties.
(5) The effect of custody of children upon a party's earning capacity.
(6) The time necessary for the claimant to acquire appropriate education, training, or employment.
(7) The health and age of the parties.
(8) The duration of the marriage.
(9) The tax consequences to either or both parties.
My review of the record satisfies me that the trial court's determination fixing permanent alimony of $7,275.20 per month for five years is clearly wrong. In reducing an award made by a trial court, an appellate court must reduce the award to the highest amount that a reasonable trier of fact could award based upon the record on appeal. Considering article 112 A, the highest award that the trial court could have set for permanent alimony is $3,000.00 per month.
I would not have limited the permanent alimony award to five years, but rather have made the award for an indefinite period, because permanent alimony is based upon need and the ability of the obligor spouse to pay. Because the greater (an indefinite period) includes the lesser (five years), I understand the award of support for five years can be shortened or lengthened if circumstances so dictate when a party makes a request for the adjustment showing a material change in circumstances. Ergo, I do not find that the five-year permanent alimony award is absolutely binding for all time, and would not disturb that part of the trial court's judgment.
The community of acquets and gains ordinarily bears the costs and expenses of a divorce. La. C.C. art. 2362.1. Because the parties are separate in property, the trial court was free to tax costs, but not attorney's fees to a party. La. C.C.P. art. 1920; Stoltz v. Stoltz, 162 So.2d 103 (La. *542 App. 4th Cir.1964). I find no abuse in the discretion of the trial court in assessing the costs of the litigation to Mr. Vincent. Because no law authorizes the award of attorney's fees when no community of acquets and gains exists, the trial court erred in taxing those fees to Mr. Vincent because no law authorizes the award of such fees in these circumstances. Campbell v. Melton, 01-2578, p. 15 (La.5/14/02), 817 So.2d 69, 80. In the absence of a finding of Mr. Vincent being in contempt of court, no attorney's fees are due. La. R.S. 9:375 is inapplicable because the case before us does not presently involve a claim for arrearages. Each party must bear his or her own attorney's fees.
Accordingly, I would amend the judgment by reducing the permanent alimony to $3,000.00 per month and delete from the judgment the award of attorney's fees to Ms. Vincent. As amended I would affirm the judgment.[3]
CANNIZZARO, J., concurring in part and dissenting in part.
I respectfully concur in part and dissent in part with respect to the per curiam. My position on each of the issues addressed in the per curiam is set forth below.
Interim Spousal Support
I agree with the per curiam that Ms. Vincent is entitled to interim spousal support. I would affirm the trial court's award of interim spousal support in the amount of $10,044.29 per month.
Final Spousal Support
I would award final spousal support in the amount of $3,000.00 per month for a five-year period. Therefore, I would find that the prenuptial agreement did not preclude the award of final spousal support.
I do not believe that the language in the prenuptial agreement between Mr. Vincent and Ms. Vincent was sufficient to waive Ms. Vincent's right to final support. I think, however, that the trial court's award of final support in the amount of $7,275.20 a month for five years was excessive based on the evidence of Mr. Vincent's income that was contained in the record. I would instead award final support in the amount of $3,000.00 per month for five years.
In deMontluzin v. deMontluzin, 464 So.2d 948 (La.App. 4th Cir.1985), this Court held that a waiver of permanent alimony must be clear and unequivocal. 464 So.2d at 949. In Sharpe v. Sharpe, 536 So.2d 434 (La.App. 4th Cir.1989), this Court determined that the language in a separate property agreement stating that neither of the parties would have "any economic claim upon the other" was an attempt to "prohibit either party from claiming (in the event of separation or divorce) alimony. . . ." 536 So.2d at 437.
In the instant case, there is no express waiver of the right to final alimony in the prenuptial agreement. Although the prenuptial agreement does state that the parties will be separate in property, the language upon which Mr. Vincent relies in asserting that he has no obligation to provide final support is insufficient, in my opinion, to be a valid waiver of his final support obligation. The prenuptial agreement states that each party owns substantial paraphernal property and that any civil fruits, revenues, or products of that property shall be assets of the owner's separate estate. Then the agreement states that "[t]he non-owner party shall have no claim to or interest in the other party's separate assets or the fruits, revenues or products thereof." This language *543 relates solely to the characterization of the fruits, revenues, and products of the parties' separate property as also being separate property. It does not expressly or impliedly create a waiver of the final support obligation.
I find that the language in the prenuptial agreement in the instant case is clearly distinguishable from the language in the Sharpe case. In Sharpe the parties expressly stated that they would have "no economic claim" against each other. The Sharpe case directly addressed the claims that the parties would have against each other, but that was not done by the parties in the instant case.
Because I believe that the parties in the instant case did not validly waive the final support obligation, I have examined the record to determine whether the trial court considered the relevant factors set forth in La. Civil Code article 112(A) relating to the award of final support. It appears to me from the trial court judge's reasons for judgment that she did consider the relevant factors, but I find that the amount of the award of final spousal support was excessive.
Based on the facts in the record relating to Mr. Vincent's net income, I believe that the amount of final spousal support awarded by the trial court judge exceeds the limit set forth in La. C.C. art. 112(B), which limits the amount of final spousal support to no more than one-third of the obligor's net income. Finally, I believe that the trial court correctly determined that the wife in this case was free from the type of fault that, under the provisions of La. C.C. art. 111, would preclude an award of final support. Thus, I would affirm the trial court's determination that final support should be awarded, but I would reduce the amount of the award to $3,000.00 per month for five years.
I do not, however, agree with the award of final spousal support set forth in the per curiam. Although a majority of judges agrees that final spousal support should be awarded, a majority does not agree upon the amount to be awarded. The per curiam relies upon Butler v. Zapata Haynie Corp., 94-1171 (La.7/5/94), 639 So.2d 1186, to determine that because two judges agree that the amount of final spousal support should be $3,000.00 and one judge thinks that the amount should be a greater amount, then there is a majority determination that the amount of final spousal support should be $3,000.00. The reasoning is that the amount the third judge would award includes the lesser amount of $3,000.00. Therefore, that judge would award at least $3,000.00 in spousal support.
I do not read the Butler case to mean that whenever a majority of judges on a panel cannot not agree upon the amount of an award, then the award shall be the lowest amount that a judge agrees to award, because that amount is a lesser, included amount in the higher amounts that other judges would award. I do not think that the Butler case establishes a general rule or formula for awarding damages when a majority of the judges on a panel agree that damages should be awarded but do not agree upon the amount of the award. There is nothing in the Butler case to indicate that the Supreme Court did not consider de novo the amount of damages to award in that case, but it is clear that a majority of the judges on the Supreme Court did agree regarding the amount of the award. In the instant case, however, a majority of the judges do not agree on the amount to be awarded. Until the Supreme Court establishes a rule or formula for the circuit courts of appeal to use in breaking a deadlock when a majority of judges on a panel cannot agree on the amount of a damage award, I think that the Butler case should be limited to its facts.
*544 Attorney's Fees
I agree with the per curiam that the trial court erred in assessing to Mr. Vincent all attorney's fees in this matter. There was no contractual obligation or statutory mandate upon which the assessment of attorney's fees to one party could be made.
Court Costs
I disagree with the per curiam in vacating the assessment of all court costs to Mr. Vincent. I believe that it was in the trial court's discretion to assess all court costs against him.
Other Aspects of the Trial Court Judgment
I agree with the per curiam in affirming all aspects of the trial court judgment not specifically addressed in the per curiam.
Writ Application
I agree with the disposition of the writ application in the per curiam.

ORDER
IT IS ORDERED that the appellant's, Scott G. Vincent, application for rehearing is denied.
CANNIZZARO, J., concurring in the denial of rehearing with reasons.
I concur in the denial of Mr. Vincent's application for rehearing. I write separately to clarify some confusion that appears to have arisen between the parties regarding the need for a five-judge panel.
On June 21, 2006, what purported to be a judgment in this case was handed down by this Court. The judgment, however, was not a valid judgment. It was inadvertently initialed by a judge who was not a member of the three-judge panel to which the case had been randomly allotted, and I, the third member of the panel, neither initialed or approved the judgment before it was inadvertently handed down. Therefore, the judgment was handed down in error, was not initialed by me, and was a nullity. The judgment was properly withdrawn by an order of this Court.
The original three-judge panel, which was comprised of Judge Jones, Judge Lombard, and me, considered the appeal. When it became clear that the three judges on the original panel did not agree upon the disposition of the appeal, it became necessary to appoint a five-judge panel to consider the case pursuant to La. Const. art. 5, § 8(B). Section 8(B) provides that "in civil matters only, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be reargued before a panel of at least five judges prior to rendition of judgment. . . ." When a majority of the original three-judge panel did not reach a majority decision, then the five-judge panel was convened, the case was reargued, and the only valid judgment in this case was issued in a per curiam decision on January 10, 2007. Because the judgment handed down on June 21, 2006, was a complete nullity, the five-judge panel was convened "prior to the rendition of judgment" as is required by La. Const. art 5, § 8(B). Thus, the argument that the five-judge panel was convened after judgment had been rendered is without merit.
NOTES
[1] We note that the Appellant filed a "Suggestion of Absence of Jurisdiction of Seven-Judge Panel" with a prayer for relief. The order of this court rescinding the appointment of the seven-judge panel dated January 5, 2007 renders this suggestion moot.
[1] The Social Security Administration declared Ms. Vincent fully disabled in 1996. She has been receiving benefits ever since.
[2] This case was on Judge Landrieu's docket until November 8, 2004, at which time Judge Irons took over.
[3] The parties' joint tax returns were not yet in evidence when the interim order was issued, but were submitted at trial and revealed Mr. Vincent's approximate annual income of $140,967.60 from 1999 through 2003.
[1] See La. C.C. art. 113. Interim spousal support was formerly known as alimony pendente lite.
[2] Mizell v. Mizell, 37,004, p. 12 (La.App. 2 Cir. 3/7/03), 839 So.2d 1222, 1229.
[3] See Butler v. Zapata Haynie Corp., 94-1171 (La.7/5/94), 639 So.2d 1186, to determine the decree of this court as to each issue on appeal.